## STATE OF MAINE

### vs.

## THE MAINE CENTRAL RAILROAD COMPANY.

#### Cumberland.    Opinion February 8, 1883.

*Railroads.   Taxation.   Constitutional law.   Stat. 1880, c. 249.*

The tax authorized by stat. 1880, c. 249, entitled "an act relating to the taxation of railroads," is a tax upon railroad corporations on account of their franchises and not upon their real or personal estate; and the tax is one which it was constitutionally competent for the legislature to impose.

ON REPORT on agreed statement.

Debt under stat. 1880, c. 249, §4, to recover one-half the tax assessed by the Governor and Council against the defendant corporation, for the year 1880, which fell due July 1, 1880, and amounted to eleven thousand dollars — the whole tax being twenty-two thousand dollars.

The report stated : "The defendant denies the legality of said tax on the sole ground that the said act is in contravention of the constitution of the state."

"If the act is constitutional, judgment is to be rendered for the state for the sum of eleven thousand dollars, and interest from July 1, 1880 ; otherwise, judgment for the defendants."

*Henry B. Cleaves*, attorney general, for the state, cited : *Com.* v. *The Peoples' Five Cent Savings Bank*, 5 Allen, 428 ; *Lunt's case*, 6 Maine, 412 ; *Society for Savings* v. *Coit*, 6 Wall. 607 ; *State Freight and Tax Case*, 15 Wall. 232 ; *Com.* v. *Lowell Gas Light Co.* 12 Allen, 75 ; *Att'y General* v. *Bay State Mining Co.* 99 Mass. 148 ; *State Railroad Tax Cases*, 2 Otto, 603 ; 5 Allen, 432 ; 4 Wheat. 428 ; *Brewer Brick Co.* v. *Brewer*, 62 Maine, 62 ; Opinion of Justices, 68 Maine, 582 ; *W. U. Tel. Co.* v. *Mayer*, etc. 28 Ohio St. 533 ; *Reeves* v.

*Treas. Wood Co.* 8 Ohio St. 333; *Baker* v. *Cincinnati*, 11 Ohio St. 534; *Home Ins. Co.* v. *Augusta*, 50 Ga. 543; 2 Head (Tenn.) 363; *Bright* v. *McCullough*, 27 Ind. 223; *Kitson* v. *Mayor*, 26 Mich. 325; *People* v. *B. and A. R. Co.* 70 N. Y. 569; *Albany N. R. Co.* v. *Brownell*, 24 N. Y. 345; *C. B. and Q. R. Co.* v. *Iowa*, 94 U. S. 155; *Ducat* v. *Chicago*, 48 Ill. 172; *Paul* v. *Virginia*, 8 Wall. 168; *Walker* v. *Springfield*, 10 The Reporter, Oct. 13, 1880 (Ill.); *Durach's Appeal*, 62 Penn. St. 491; Cooley, Taxation, 128, 328; *License Tax Cases*, 5 Wall. 472; *Railroad* v. *Penn.* 15 Wall. 282; *Catlin* v. *Hull*, 21 Vt. 152; *Duer* v. *Small*, 4 Blatch. 263; *Pullen* v. *Wake Co.* 66 N. C. 361; *Chicopee* v. *Hampden*, 16 Gray, 38; *Prov. Inst.* v. *Mass.* 6 Wall. 611; *Com.* v. *Hamilton M'f'g Co.* 12 Allen, 298; *Com.* v. *Cary Imp. Co.* 98 Mass. 19; *Prov. Bank* v. *Billings*, 4 Pet. 514; *DeCamp* v. *Eveland*, 19 Barb. 81; *Tappan* v. *Merchants*, 19 Wall. 490.

*Drummond and Drummond, and Orville D. Baker*, for defendants.

We agree with the attorney general that the presumption is that the act is constitutional; but if it appears otherwise, the court will not hesitate so to declare.

As the court say in the *Peoples' Five Cent Savings Bank* case, 5 Allen, 428, the authority to impose taxes "is to be exercised carefully and within the exact limits which are prescribed by that clause in the frame of government which creates the power and defines the extent to which the legislature may go in its exercise. If they have exceeded it, if the constitutional boundary has been overstepped, there can be no doubt of the rights of the citizens to resist such unauthorized exercise of power, *and of the duty of this court to declare such legislative action void*, and to protect all persons against its unlawful exactions."

The provisions of the constitution of Maine, which can be said to touch the matter of taxation, are the following: Article IV, Part III, § 1; Article I, § 22; Article IX, §§ 7, 8, 9.

General laws providing for the taxation of railroads : Laws of 1845, c. 165 ; R. S. of 1857, c. 6, § § 4, 5 and 11, par. 2 ; R. S. of 1871, c. 6, § § 4, 5 and 14, par. 2.

In 1874, (c. 258,) the taxation of the shares in the capital stock of railroad companies was transferred to the Governor and Council, who were to ascertain their value, and, after deducting the valuation of the real estate taxed by the towns, assess a tax of one and one-half per cent. upon the balance.

By the act under consideration the Governor and Council are "To appraise the several railroads in this state, with their franchises, rolling stock and fixtures, at their cash value, and upon this valuation to levy a tax of one per centum, so as to make said tax equal, as near as may be, to the taxes of all kinds upon other property, through which said roads may extend."

"The appraisal of the property of said railroad companies shall embrace only the road-ways, rolling stock and franchises. The land, buildings and fixtures outside of said road-ways shall be taxable in the towns where situated, as other property."

Like the preceding laws, it leaves all railroad property outside of the roadway to local taxation.

There is a mathematical paradox in the first section. They are to appraise the property at its cash value, and upon that levy one per cent tax ; mathematically speaking, this fixes the amount of the tax ; but the statute adds a further condition of the problem — making the tax equal as near as may be to the taxes of all kinds upon other property through which the roads may run ! Now this condition is a mere "stump speech in the belly" of the act, or it is to limit the rate or the appraisal — but both of them are expressly fixed, the former at one per cent and the latter at the cash value of the property.

One imperative rule of taxation, under such constitutions as ours, is well stated by Chief Justice Doe, in an opinion upon the New Hampshire Statute : "A state tax must be uniform throughout the state, a county tax throughout the county, and a town tax throughout the town." This proposition is self-evident, but it is supported by the authority of text-books and judicial decisions. Cooley on Taxation, 180 ; Burroughs on Taxation,

§ 51 (p. 62) and § 26; *Banks* v. *Hines*, 3 Ohio, 1; *Gilman* v. *Sheboygan*, 2 Black, 510, 517; *Pine Grove* v. *Talcott*, 19 Wallace, 666, 675.

The application of this rule to the statute in question at once shows its unconstitutionality. The tax is of a triplicate character. One portion of the tax is a municipal tax of the towns where the property is situate; another portion of the tax is a municipal tax of the towns where the stockholders reside; the remainder is a state tax. The first portion is apportioned and assessed equally with the other property in the town where it is situate, and is, therefore, valid; another portion is assessed in the town where stock is owned, either by an arbitrary standard or by the valuation of a different town—that is, "the towns through which said roads may extend," and *not* the towns in which the stock is owned, and for which it is assessed; and the balance goes to the state for state purposes, at just two and one-half times the rate at which all the other state tax was assessed. Tax Act of 1880, Special Laws, c. 295, p. 312.

The New Hampshire statute provides that one-quarter of the tax shall be paid to the towns through which the railroad extends, and the other three-quarters are disposed of precisely as under our Maine statute. Of the New Hampshire statute, and the tax assessed under it, Chief Justice Doe, in *B. C. & M. R. R. Co.* v. *The State*, says (and his remarks as to the three-quarters of that tax apply to the whole of our tax):

"So much of the tax as does not go to the railroad towns is not a tax of those towns, in any sense or for any purpose, and cannot be assessed in proportion to their valuation and rates. The proportional rule of the constitution requires the municipal taxation of a town to be uniform throughout the town, and state taxation to be uniform throughout the state. A state tax and a municipal tax of stockholder's towns, assessed in proportion to the valuations and rates of railroad towns, is a perfect example of one form of disproportional taxation, and of one form of violation of the constitutional rule."

In *Portland Bank* v. *Apthorp*, 12 Mass. R. 252, a tax of one per cent was assessed upon a corporation; the court sustained

the tax as an excise tax upon the franchise of the corporation, but held that it could not be sustained as a tax upon property.

The court say, (page 255) :

"Under the first branch of this power, namely, that of imposing and levying rates and taxes, the requisition upon the banks cannot be justified; for these taxes must be proportional upon all the inhabitants of persons resident and estates lying within the Commonwealth. The exercise of this duty requires an estimate, a valuation of all the property in the Commonwealth; and then an assessment upon each individual, according to his proportion of that property. To select any individual or company, or any specific article of property, and assess them by themselves, would be a violation of this provision of the constitution." This principle is affirmed in *Commonwealth* v. *The Peoples' Five Cent Savings Bank*, 5 Allen, 428; *Oliver* v. *Washington Mills*, 11 Allen, 268; *Dorgan* v. *Boston*, 12 Allen, 223; *Commonwealth* v. *Hamilton Man'g Co.* 12 Allen, 298; *Commonwealth* v. *Provident Institutions for Savings*, 12 Allen, 312. See also, 101 Mass. p. 585; 118 Mass. 389; 125 Mass. 567; Opinion of the Justices, 4 N. H. 565, 568; *Brewer Brick Co.* v. *Brewer*, 62 Maine, 62; *Jones* v. *Winthrop Savings Bank*, 66 Maine, 242; *Knowlton* v. *Supervisors*, 9 Wis. 410. 3 Ohio, 1; 11 Wis. 42.

In Michigan and Illinois, the constitution contains express provision by which special taxes upon such corporations may be assessed. Hence Illinois and Michigan decisions, and decisions of the United States courts in cases from those states, are inapplicable to the case at bar.

This act, if it assesses a tax upon real or personal property, is invalid, for at least three reasons :

1. It assesses a state tax of ten mills upon *this* property, while upon *other* property the law assesses a tax of but *four* mills.

2. It assesses a tax for general municipal purposes at a *fixed* rate instead of the rate in the towns where the tax is paid.

3. It assesses a tax of one town upon property situated in another town. *Dyar* v. *Farmington Village Corporation*, 70 Maine, 515.

But the attorney general argues that the legislature intended it as an excise or duty, or in the form of a license. No matter what they "intended." *Oliver* v. *Washington Mills*, 11 Allen, 268.

The history which we have given of the legislation of this state, in relation to the taxing of railroads, shows that this is a *tax* on property, and not an excise. What is an excise? Whatever it may be in any other state, in Maine it cannot be a tax upon real or personal property, in whole or in part. A tax upon real or personal estate, or upon franchises and real and personal estate, is not a constitutional excise.

Our statutes require full returns from all the railroad companies, covering all the particulars necessary to be had in order to make the appraisal required in the act of 1880. Laws of 1874, c. 258, § 1, (which is not repealed by act of 1880); Laws of 1877, c. 257; Railroad Com's Report for 1876, appendix.

So that our statute *does* provide a mode for ascertaining the value of the property, and the tax is assessed upon that valuation. Hence there is "no doubt that a tax, imposed upon the amount so ascertained, is a property tax."

In *Commonwealth* v. *Provident Institution for Savings*, 12 Allen, 312, the court expressly say that the tax is not assessed on the property held by the bank. But our statute, we repeat, *does* embrace a valuation of the market value of the property, and one is absolutely necessary to the assessment of the tax, and a valuation was in fact made. We submit that the cases of *Chicopee* v. *Hampden*, 16 Gray, 38, and *Commonwealth* v. *Cary Improvement Co.* 98 Mass. 19, cited by the attorney general, sustain our position. They hold that the market value of all the shares of the capital stock was not a proper measure of the value of the property of the corporation.

Some of these cases were carried to the Supreme Court of the United States and the tax was sustained upon the ground stated in the opinion of the state court; but Chief Justice CHASE and Justices GRIER and MILLER dissented upon the ground that in their opinion "the tax was a tax on the property and not upon

the franchises and privileges" of the corporation.   6 Wallace, 611, 632.

The constitution of Connecticut does not contain any limit upon the power of taxation by the legislature, and a tax on savings banks under a statute similar to that of Massachusetts, was sustained by the Supreme Court of Connecticut and by the Supreme Court of the United States on the same grounds as are relied upon in the Massachusetts cases. *Coite* v. *Conn. Savings Bank*, 32 Conn. 173 ; S. C. 6 Wallace, 594.

The act of 1874, in terms imposes an *excise* ; the act of 1880, in terms imposes a *tax*.   The fact that in both cases it is *to* the corporation, proves nothing.   The test is, " *Upon what is the tax laid ?* "

WALTON, J.   The question is whether the tax authorized by the act of 1880, c. 249, entitled " An act relating to the taxation of railroads," is one which it was competent for the legislature to impose.   If it is a tax upon real or personal estate, then it is one which it was not competent for the legislature to impose ; for the constitution (Art. 9, § 8) requires all taxes upon real and personal estate to be apportioned and assessed equally, according to its just value ; and we think it must be conceded that this tax is not so apportioned and assessed.   But if it is a franchise tax — that is, a tax imposed upon railroad corporations on account of their powers and privileges — then it is one which it was competent for the legislature to impose ; for the power of the legislature to impose such a tax is well settled, and is not denied by the defendants.   The question, therefore, is, whether it must be regarded as a property tax or a franchise tax. We think it is clearly a franchise tax, and was so intended by the legislature.   True, the amount of the tax is to be determined by an appraisal of the railroads, with their franchises, rolling stock and fixtures.   The first section of the act so states.   But this mention of the rolling stock and fixtures is not for the purpose of imposing a tax upon them ; it is for the purpose of excluding from the valuation the remainder of the corporate property, namely, the land and buildings.   This is made plain

by the second section, which declares that the appraisal shall embrace only the road-ways, rolling stock and franchises, and that the land, buildings and fixtures outside of the road-ways, shall be taxable in the towns where situated.

Now it is perfectly well settled that the amount of a franchise tax upon a corporation may be graduated or measured by an appraisal of the whole, or any portion, of the corporate property, without thereby making it a property tax. Most franchise taxes are so measured. Possessing the power to impose a franchise tax to any amount it deems proper, the legislature may measure the amount by any standard it pleases. It may fix the amount at a specified sum, as a poll tax is imposed upon an individual, and without regard to the amount of business the corporation does, or the amount of property it possesses, or it may graduate and measure the amount by an appraisal of the whole or any portion of its property, or by the amount of its business.

A careful examination of the act under consideration will show that what the legislature intended to do, and what, in the judgment of the court, it in fact did do, was to impose a franchise tax upon railroad corporations, and to measure the amount by the value of their franchises and their property exclusive of their real estate. Their reasons for this are obvious. The legislature believed that railroad property was not paying its fair share of the public taxes. True, the real estate was being taxed in the towns and cities where it was situated. But neither the shares in the hands of stockholders, nor the rolling stock, could be thus successfully reached. The legislature must be presumed to know, and most of its members, if not all, undoubtedly did know, that a specific tax could not be constitutionally imposed upon this class of property. It must also be presumed to have known that it did possess the power to impose a franchise tax upon railrord corporations to any extent it might deem proper, unless their charters expressly exempted them from such a tax. It therefore resolved to levy a franchise tax, which it clearly possessed the power to do, and to make it the exact equivalent of a just tax upon the value of their franchises and that portion of their property which would otherwise escape taxation, and

then enact that this franchise tax, thus justly and equitably graduated, should be in lieu of all taxes upon the shares of these companies; and this is precisely what the act under consideration accomplishes. It imposes a franchise tax, equitably and justly measured by an appraisal of that portion of the corporate property and the corporate franchises, which would otherwise be likely to escape taxation, and declares that this tax shall be in lieu of all taxes upon the shares. We fail to see anything oppressive or unconstitutional in this mode of taxing these corporations. In principle it does not differ from the mode sanctioned in *Commonwealth* v. *Hamilton Manufacturing Co.* 12 Allen, 298. Same case, 6 Wallace, 632.

In that case, the corporation was required to pay a tax of one and one-sixth per cent on the entire value of its shares, less the value of its real estate and machinery. The court held that the reason for the deduction was obvious; that it was because the real estate and machinery were taxable in the towns where they were situated; and if their value was not deducted from the franchise tax, inequality or double taxation would be the result. So, in this case, railroad corporations are required to pay a tax of one per cent on the entire value of the corporate property and franchises, less the value of the real estate which is taxable in the towns where it is situated. A careful examination of the two statutes will show that the one under consideration in that case, and the one under consideration in this case, are identical in principle, although differing in form. It was conceded in that case that the tax could not be sustained as a tax upon property, because not "proportional," as required by their constitution.

But the court held that it could be sustained as a franchise tax; and it was so sustained by the Supreme Court of the United States as well as by the Supreme Court of the state. The same reasoning which sustained the tax in that case will sustain it in this. The reasoning seems to us sound; and our conclusion is, that the tax authorized by the act of 1880, c. 249, is a tax upon railroad corporations on account of their franchises, and not upon their real or personal estate; that while it is true that the amount of the tax is measured by the value of a portion

of the corporate property as well as the corporate franchises, still, it is not a tax upon real or personal estate, within the meaning of the constitution, but a tax upon the powers and privileges of these corporations; and that the tax is one which it was constitutionally competent for the legislature to impose.

> *Judgment for the State for the sum of eleven thousand dollars, and interest from July 1, 1880.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and SYMONDS, JJ., concurred.