OPINION

OF THE JUSTICES OF THE SUPREME JUDICIAL COURT
GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION

\* \* \* \* \* \*

QUESTIONS PROPOUNDED BY THE HOUSE IN AN ORDER
DATED APRIL 17, 1959
ANSWERED MAY 5, 1959


HOUSE ORDER PROPOUNDING QUESTIONS
STATE OF MAINE
HOUSE OF REPRESENTATIVES
99th LEGISLATURE

WHEREAS, a bill entitled "An Act Providing for Severance Taxation of Certain Natural Resources," (House Paper 902, Legislative Document 1271) is pending before the 99th Legislature and it is important that the Legislature be informed as to the constitutionality of the proposed bill; and

WHEREAS, it appears to the members of the House of the 99th Legislature that certain provisions of the bill present important questions of law and the occasion is a solemn one;

NOW, THEREFORE, Be it Ordered, that in accordance with the provisions of the Constitution of the State, the Justices of the Supreme Judicial Court are hereby respectfully requested to give this Legislature their opinion on the following questions:

## 1.

Do any of the provisions of section 12 of Legislative Document 1271 assess a tax upon real or personal estates without regard to apportionment according to the just value of such real or personal estate in violation of section 8 of Article IX of the Constitution of Maine?

## 2.

Do any of the provisions of section 5 of Legislative Document 1271 assess a tax upon real or personal estates without regard to apportionment according to the just value of such real or personal estate in violation of Section 8 of Article IX of the Constitution of Maine?

## 3.

Do any of the provisions of Sections 2, 4 and 5 of Legislative Document 1271 amount to a suspension of the sovereign power to tax in violation of Section 9 of Article IX of the Constitution of Maine?

## 4.

Do the provisions of Section 4 of Legislative Document 1271 delegate legislative power to the Commissioner of Inland Fisheries and Game in violation of Section 1 of Part First of Article IV of the Constitution of Maine?

## 5.

Would House Paper 902, Legislative Document 1271 "An Act Providing for Severance Taxation of Certain Natural Resources," if enacted by the Legislature, be constitutional?

HOUSE OF REPRESENTATIVES
Speaker laid before the House and
on Motion of Mr. Maxwell of Jay
Apr 17, 1959
passed.
Harvey R. Pease
Clerk

HOUSE OF REPRESENTATIVES
Read and
On Motion of Mr. Maxwell Of Jay
APR. 16, 1959
Tabled Pending passage.
Tomorrow assigned.
Harvey R. Pease
Clerk

Name: Maxwell

Town: Jay

Reproduced and distributed under the direction of the Clerk of the House.

A true copy. Attest: HARVEY R. PEASE
Clerk of the House

Transmitted by Director of Legislative Research pursuant to joint order.

NINETY-NINTH LEGISLATURE

Legislative Document                                No. 1271

H. P. 902        House of Representatives, March 17, 1959

Referred to the Committee on Taxation. Sent up for concurrence and 1,000 copies ordered printed.

HARVEY R. PEASE, Clerk

Presented by Mr. Maxwell of Jay.

STATE OF MAINE
IN THE YEAR OF OUR LORD NINETEEN
HUNDRED FIFTY-NINE

AN ACT Providing for Severance Taxation of Certain Natural Resources.

Be it enacted by the People of the State of Maine, as follows:

**Sec. 1. R. S., c. 16-A, additional.** The Revised Statutes are amended by adding a new chapter to be numbered 16-A, to read as follows:

'Chapter 16-A.

Severance Taxation of Natural Resources.

**Sec. 1. Purpose.** It is the intent of this chapter to provide equitable taxation of the natural resources of the State, utilizing tax measures consistent with conservation of such resources, to the end that the lands in the State shall continue to furnish increasing natural resource products, and the towns in which such lands lie shall receive just tax revenues from such lands.

**Sec. 2. Property exempt from taxation.** All real property taxed under the provisions of section 5 shall be exempt from taxes imposed under chapter 91-A, except as to such taxes as may have been previously levied.

**Sec. 3. Forest crop land determined.**

I. The owner of a tract of land in this State of not less than 40 acres may file a petition with the Forest Commissioner stating that he believes the tract of land described is more useful for growing timber and other forest crops than for any other purpose, that he intends to practice forestry thereon, that all persons holding incumbrances thereon have joined in the petition and request that the

land be approved as "Forest Crop Land" under this chapter. Wherever such land is encumbered by a mortgage securing any issue of bonds or notes, the trustees named in such mortgage may join in the petition, and such action shall for the purpose of this section be deemed the action of all holders of such bonds and notes.

II. Upon the filing of such petition the commissioner shall set the matter for public hearing at such time and place as he may determine, but not later than one year from the date of such filing. Notice of the time and place of the hearing and a description, as the commissioner deems advisable, of the property requested to be approved as "Forest Crop Land" shall be given to the owner of such land and to the assessor of the municipality in which it is situated, by mail at least 30 days before the day of hearing. In addition, a copy of such notice shall be published once a week for 3 consecutive weeks in such newspapers as the commissioner shall deem appropriate, the first publication to be at least 30 days before the day of hearing. The hearing may be adjourned from time to time and no notice of the time and place of the adjourned hearing need be given, except an announcement thereof by the presiding officer at the hearing at which the adjournment is had.

III. After hearing all the evidence offered at the hearing and after making such independent investigation as he sees fit, the Forest Commissioner shall make a finding of fact and make and enter an order accordingly. If the Commissioner finds that the facts give reasonable assurance that a stand of merchantable timber will be developed on such lands within a reasonable time, and that such lands are then held permanently for the growing of timber, and that all persons holding incumbrances against such land have in writing agreed to the petition, the order entered shall grant the request of the petitioner on condi-

tion that all unpaid taxes against said lands be paid within 30 days thereafter; otherwise, the commissioner shall deny the request of the petitioner. If the request of the petitioner is granted, a copy of the order shall be forwarded to the State Tax Assessor, to the clerk of each municipality and to the register of deeds of each county in which any of the land affected by the order is located. The register of deeds shall record the entry, transfer or withdrawal of all forest crop lands on the county records and shall be entitled to a fee to be paid by the owner of 10 cents for each page of each instrument so recorded. Any order of the Forest Commissioner relating to the entry of forest crop land issued on or before March 20th of any year shall take effect in such year, but all orders issued after March 20th of any year shall take effect the year following.

Sec. 4. Taxation of forest crop land. Upon the filing of the order specified in section 3, subsection III, the land described shall be "Forest Crop Land," on which taxes shall be payable only as provided in this chapter. The petition by the owner and the making and recording of the order of the Forest Commissioner shall constitute a contract between the State and the owner, running with the land, for a period of 50 years, unless terminated as provided, with privilege of renewal by mutual agreement between the owner and the State. The State as an inducement to owners and purchasers of forest crop land under this chapter agrees that until terminated as provided in this chapter, no change in or repeal of this chapter shall apply to any land then accepted as forest crop land, except as the Forest Commissioner and the owner may expressly agree in writing. If at the end of 50 years the contract is not renewed by mutual consent, the merchantable timber on such land shall be estimated by an estimator jointly agreed upon by the Forest Commissioner and the owner. In the event the Commissioner and owner

fail to agree, an estimator shall be appointed by the county commissioners of the county in which the land is located, whose estimate shall be final, and the cost of the estimate shall be borne jointly by the Forest Commissioner and the owner. The owner upon the completion of the estimate shall pay the severance tax on the stumpage in the same manner as if the stumpage had been cut. The owners by such contact consent that the public may hunt and fish on such lands subject to such regulations as the Commissioner of Inland Fisheries and Game may prescribe.

Sec. 5.   Taxation.

I.   The assessor of each municipality on making up the tax list each year shall enter as to each forest crop land description the words "Forest Crop Land" which shall be a sufficient designation that the land described is subject to this chapter. Such land shall thereafter be assessed as provided. No tax shall be levied on forest crop land except the taxes provided in this chapter, except that any buildings located on forest crop land shall be assessed as personal property, subject to all laws and regulations for the assessment and taxation of such property.

II.   Any owner shall be liable for and pay to the treasurer of the municipality on or before January 31st of each year on each such description a sum called the "acreage share" computed at the rate of 10 cents per acre on all lands. If such acreage share shall not be paid by January 31st to the treasurer of the municipality, it shall be subject to interest at the rate of 1% per month or fraction thereof from January 1st preceding. Taxes levied under this chapter shall be collected in the same manner as are municipal taxes on real estate under chapter 91-A.

III.   On or before the first of April each year the treasurer of the municipality shall certify to the Forest Com-

missioner for each owner the legal descriptions in such municipality on which the owner has paid the acreage share pursuant to this section, and also on acreage shares previously unpaid and paid prior to April 1st, except on lands on which an order of cancellation has been issued by the Forest Commissioner as provided. The treasurer of each municipality shall notify the Forest Commissioner of the names of the owner and the description of land on which acreage shares have not been paid for more than one year. The Forest Commissioner upon receipt of this information shall withdraw the order of entry of such land as forest crop land.

Sec. 6.   Forestation.

I.   No person shall cut any merchantable wood products on any forest crop land where the forest crop taxes are delinquent nor until 30 days after the owner has filed with the Forest Commissioner a notice of intention to cut, specifying the descriptions and estimated amount of wood products to be removed, and also the volume to be left as growing stock. The Forestry Commissioner may require a bond executed by a surety company licensed in this State for such amount as may reasonably be required for the payment of the severance tax provided in this chapter.   The commissioner, after examination of the lands specified, may limit the amount of forest products to be removed in order that adequate growing stock may be left to furnish recurring forest crops. Cutting in excess of such limitation shall render the operator liable to double the severance tax prescribed. Merchantable wood products include all wood products except wood used for fuel by the owner.

II.   Within 30 days after completion of cutting on any land description, but not more than one year after filing of the notice of intention to cut, the owner shall transmit

to the Forest Commissioner a written statement of the products so cut, specifying the variety of wood, kind of product, and quantity of each variety and kind as shown by the scale or measurement thereof made on the ground as cut, skidded or loaded, as the case may be. The commissioner may accept such report as sufficient evidence of the facts, or may investigate and determine the fact of the quantity of each variety and kind of product so cut during the period covered by such report. A severance tax on wood products covered by the report shall be paid at the rates prescribed in sections 11 and 12.

Sec. 7. Withdrawal of forest crop land.

I. The Forest Commissioner shall once in 5 years, or on application of the owner of any forest crop land or the officers of the municipality in which the land is located, or on his own motion at any time cause an investigation to be made and a hearing had as to whether any forest crop land shall continue under this chapter. If on such hearing after due notice and opportunity to be heard by the municipality and the owner, the commissioner shall find that the land does not meet the requirements of section 3, the entry of such land shall be cancelled and copies of the order of withdrawal specifying the description shall be filed with the commissioner, the State Tax Assessor, the clerk of the municipality and the register of deeds of the county in which the land lies, and none of the provisions of this chapter relating to forest crop land shall thereafter apply except so far as may be necessary to collect any previously levied severance tax.

II. If at any time the owner shall make use of the land for anything other than forestry, the commissioner shall issue an order of withdrawal and the owner shall be liable for the tax provided in subsection IV.

III. Whenever the owner of forest crop land conveys such land he shall, within 10 days of the date of the deed,

file with the Forest Commissioner on forms prepared by the commissioner a transfer of ownership signed by him and an acceptance of transfer signed by the grantee certifying that he intends to continue the practice of forestry on such land. The commissioner shall forthwith issue a notice of transfer to all officers designated to receive copies of orders of entry and withdrawal. Whenever a purchaser of forest crop land declines to certify his intention to continue the practice of forestry thereon, such action shall constitute a cause for cancellation of the order of entry.

IV. Any owner of forest crop land may withdraw part or all of it from this chapter, by filing a declaration with the commissioner containing a description of it and by payment within 30 days of the amount of all real estate tax that would have been charged against such lands in the previous 5 years had they not been subject to the provisions of this chapter with simple interest thereon at 5% per year. The exact amount of the tax shall be determined by the Forest Commissioner after hearing and upon due notice to all parties interested, provided that when the tax rate of the current year has not been determined the rate of the preceding tax year may be used. On payment of the tax the Forest Commissioner shall issue an order of withdrawal and file copies thereof with the clerk and assessor of the municipality and the register of deeds of the county in which such land lies. Such land shall then cease to be forest crop land.

Sec. 8. Taxation after withdrawal. When any land ceases to be forest crop land, by virtue of an order of withdrawal issued by the Forest Commissioner, taxes thereafter levied thereon are payable and collectible in the same manner as similar land not governed by this chapter.

Sec. 9. Records of Forest Commissioner. The Forest Commissioner shall keep a set of forest crop land books

which shall contain the description of each parcel of forest crop land, the owner's name and any other information he may deem pertinent.

Sec. 10. Forest crop land information. The Forest Commissioner shall annually publish and distribute information concerning the practice of forestry on forest crop land and the method of taxation of forest crop land provided in this chapter.

Sec. 11. Forest crop land not in a municipality. With respect to forest crop land not located in a municipality the State Tax Assessor shall exercise the authority and perform the duties of those municipal officers herein specified, except that the State Tax Assessor shall enforce the collection of delinquent taxes under this chapter in accordance with his authority for the collection of delinquent taxes provided under chapter 16.

Sec. 12. Severance tax on resource products. Taxes levied for the privilege of severing the resource products specified under this chapter from the soil of this State are predicated on the quantity of product severed, and shall be paid at the rates provided in this section. The word "severed" shall mean the taking from the soil of this State any of the products specified in this chapter in any manner whatsoever.

### SCHEDULE OF TAX RATES

On sand, gravel or stone .................... 1c per ton

On pulpwood ........................... 50c per cord

On soft or hardwood lumber .. $1 per thousand board feet

All metallic or non-metallic minerals, or other natural resources except sand, gravel, stone, pulpwood and soft or hardwood lumber ...... 3c per ton

The measure of tax is the quantity of the entire production in this State at the date of severance or production, regardless of the place of sale or to whom sold, or whether a sale has been made or by whom used, or to the fact that delivery may be made to points outside of the State, and the quantity or value, as the case may be, of all resource products shall be computed as at the date of severance from the soil in an unmanufactured state.

If any person for any tax under this section shall ship or transport resource products, or any part thereof, out of the State, without making a sale then the measurement thereof in the condition or form in which they existed immediately at the point of severance, shall be the basis for the assessment of the tax imposed by this section.

In all cases where the tax levied by this chapter has been previously paid by the owner, producer or vendor, then purchasers are not required to report for tax such production, but are required to report such purchases to the Tax Assessor as having had tax paid by owner, producer or vendor. This report shall be filed monthly by purchasers and shall give the following information; name and address of owner, producer or vendor, number of units purchased and amounts from each county from which the resource products were severed. If tax has not been paid by the owner, producer or vendor, it shall become the liability of the purchaser and shall be paid by him.

Sec. 13. Owner primarily liable for tax. The tax hereby levied is primarily assessed against the owner of resource products or against the owner of the land from which such products were severed.

The owners of resource products severed from the soil are proportionately responsible and liable for payment of any tax levied, and if tax due on such products severed from the soil is unpaid, then such taxes shall be paid to the State

Tax Assessor by the owners thereof and the tax shall operate as first lien and privilege shall follow said products into the hands of the ultimate manufacturer or person or dealer, whether in good or bad faith.

Sec. 14. Out-of-state transportation of resource products. If any person liable for any tax under this chapter shall transport such resource products or any part thereof, out-of-state, without making a sale, then the quantity in the condition or form in which they existed immediately before transportation out-of-state shall be the basis for the assessment of the tax imposed.

Sec. 15. Liability for tax on resource products. Liability for the tax imposed shall apply to any person who shall sever any natural resource products from government or privately owned land. All taxes levied shall be collected by the State Tax Assessor. The State Tax Assessor shall pay all of such collections into the State Treasury to be credited to the general fund.

Sec. 16. Title to resource products in dispute. When the title to any resource products being produced or severed from the soil is in dispute or whenever the purchaser of such products, or any person engaged in the producing or severing of resource products, from the soil, shall be withholding payments on account of litigation or for any other reason such purchaser of such products, or person actually engaged in producing or severing such products, is hereby authorized, empowered and required to deduct from the gross amount thus held the amount of the tax levied, and to make remittance to the State Tax Assessor, as provided by this chapter.

Sec. 17. Responsibility for making reports. Every person producing or severing such products from the soil in this State, shall, when making the reports required by this

chapter, file with the State Tax Assessor a statement, under oath, on forms prescribed by him of the business conducted by such person during the period for which the report is made, showing the kind of products and the gross quantity thereof so severed or produced, and such other reasonable and necessary information pertaining thereto as the State Tax Assessor may require for the proper enforcement of the provisions of this chapter.

All persons engaged in the business of purchasing or manufacturing, in whole or in part, any resource products in this State, shall make and keep for a period of 3 years, a complete and accurate record showing the gross quantity of products purchased, the value thereof, the names of the persons from whom purchased, the time of the purchase, the county in which severed and any other information which the State Tax Assessor may require. Any person failing to make the report required by this section shall be guilty of a misdemeanor and be punished by a fine of not less than $100 nor more than $500 for each offense.

Sec. 18. Removal of resource products from state. When requested by the State Tax Assessor, all transporters of resource products which are subject to the tax imposed, out of, within or across the State of Maine, shall be required to furnish the State Tax Assessor such information relative to the transportation of such products as may be necessary to carry out the provisions of this chapter.

The State Tax Assessor shall have the authority to inspect bills of lading, waybills or other documents, and such books or records as may relate to the transportation of resource products in the hands of such transporter out of, within or across the State. The State Tax Assessor shall be empowered to demand the production of such bills of lading, waybills or other similar documents and books and records relating to the transportation of such products at any point in the State of Maine which he may designate.

The removal by the owner, transporter, purchaser or producer of resource products, except interstate commerce carriers, from the State without first paying all severance tax that might be due, or obtaining from the State Tax Assessor or his duly authorized agent, in advance, written approval or permit to remove from the State any of the resource products taxed by this chapter, shall be guilty of a misdemeanor and, upon conviction, be fined not less than $100 nor more than $500 for each offense.

The State Tax Assessor, or his duly authorized agent, shall have the right and authority to assess and collect any severance tax found to be due and unpaid, at the point of removal from the State, upon all resource products found being removed from the State and shall assess, in addition to the tax found due, interest at the rate of 6% per annum, together with damages and penalties in an amount not to exceed $500, and not to be less than $100, upon any severer, producer, owner, purchaser or transporter, except interstate commerce carriers, found to be removing such products from the State.

In cases of interstate commerce carriers, duly qualified as such and having a permit to conduct such operations, using bills of lading or waybills prescribed or approved by the Interstate Commerce Commission, such common carriers shall all be required to keep the usual records at offices in this State where such records are usually kept.

Sec. 19.  Requiring additional information for computation of tax.  The State Tax Assessor shall have the power to require any person engaged in producing or severing resource products from the soil, to furnish any additional information deemed by him to be necessary for the purpose of computing the amount of said tax.  The State Tax Assessor shall have the power to examine the books, records, letters, papers, documents and all files of such persons for the

purpose of assessing the tax; and to that end, shall have the power to examine witnesses, and if any such witness shall fail or refuse to appear at the request of the State Tax Assessor, or refuse access to books, records, letters, papers, documents and files, said State Tax Assessor shall have the power and authority to proceed as provided by chapter 17.

Sec. 20. Taxes due and payable. The taxes levied shall be due and payable in monthly installments, on or before the 15th day of the month next succeeding the month in which the tax accrues. The person liable for the tax shall, on or before the 15th day of the month make out a return on the form prescribed, showing the amount of the tax for which he is liable for the preceding month, and shall mail or send the same, together with a remittance for the amount of the tax, to the State Tax Assessor. When the total tax for which any person is liable under this chapter does not exceed the sum of $10 for any month, a quarterly return and remittance, in lieu of the monthly return may not be made on or before the 15th day of the month next succeeding the end of the quarter for which the tax is due. Such return shall be signed by the taxpayer or a duly authorized agent of the taxpayer.

Sec. 21. Reports. If any person shall fail to remit to the State Tax Assessor, as required, the tax imposed by this chapter for the reason that the owner of such resource products is paying the tax direct to the State Tax Assessor, then such person shall report to the State Tax Assessor, on forms prescribed by him, the kinds and quantities of such products upon which the tax was not paid. Such reports shall be made at the end of each calendar month.

When any board of county commissioners, or any members thereof, of any county in the State shall purchase any resource products upon which the tax has not been paid, then the said board shall file the reports and remit the tax

due to the State Tax Assessor in the same manner as is required of other taxpayers.'

Sec. 2. **Effective date.** The provisions of this act shall become effective January 1, 1960.

### ANSWERS OF THE JUSTICES

To the Honorable House of Representatives of the State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on April 17, 1959.

QUESTION (1): Do any of the provisions of section 12 of Legislative Document 1271 assess a tax upon real or personal estates without regard to apportionment according to the just value of such real or personal estate in violation of section 8 of Article IX of the Constitution of Maine?

ANSWER: We answer in the negative.

Section 12 concerns itself not with assessment of a tax upon real or personal estate, but with

> " 'a tax imposed upon the performance of an act, the engaging in an occupation or the enjoyment of a privilege.' . . . But our Constitution contains no provision limiting the legislative imposition of excise taxes or, to use the language of the Court: 'Our Constitution imposes no restriction upon the Legislature in imposing taxes upon business.' *State* v. *Telegraph Co.*, 73 Maine, 518, 531." *Opinion of Justices*, 123 Me. 576, 577, 578. See also *State* v. *Vahlsing*, 147 Me. 417.

QUESTION (2): Do any of the provisions of section 5 of Legislative Document 1271 assess a tax upon real or per-

sonal estates without regard to apportionment according to the just value of such real or personal estate in violation of Section 8 of Article IX of the Constitution of Maine?

ANSWER: We answer in the affirmative.

Section 5 does assess a tax upon real estate. Article IX, Section 8 of the Constitution of Maine reads:

> "All taxes upon real and personal estate, assessed by authority of this state, shall be apportioned and assessed equally, according to the just value thereof; but the legislature shall have power to levy a tax upon intangible personal property at such rate as it deems wise and equitable without regard to the rate applied to other classes of property."

The purpose of Article IX, Section 8 is to equalize public burdens so that the taxpayer shall contribute to the entire tax burden in proportion to his property. While the Legislature in its wisdom has the authority to exempt from taxation by uniform laws any particular class of property, it does not have the authority, except in the case of intangible personal property, to provide for one mode of assessment as to one class of property and another mode as to another class.

Section 5 of the proposed Act provides for an " 'acreage share' computed at the rate of 10 cents per acre on all lands" designated as "Forest Crop Land" under the provisions of the Act. This is palpably a tax on real estate and is so designated in Section 5 II. As such it is not assessed according to the just value of the property. Such provision is a violation of the limitation imposed by Article IX, Section 8.

QUESTION (3): Do any of the provisions of Sections 2, 4 and 5 of Legislative Document 1271 amount to a suspension of the sovereign power to tax in violation of Section 9 of Article IX of the Constitution of Maine?

ANSWER: We answer in the affirmative.

Article IX, Section 9 of the Constitution of Maine reads:

> "The legislature shall never, in any manner, suspend or surrender the power of taxation."

The Legislature has the ". . . power to determine what kinds and classes of property shall be taxed and what kinds and classes shall be exempt from taxation." *Opinion of Justices,* 141 Me. 446, 447, and cases cited.

> "No matter what words the Legislature uses, or what attempts it makes to pass an exemption statute without the right to change or repeal it, it cannot bind itself so as to prevent a future change or repeal. The Constitution would make the part which attempts the prevention of a change or repeal, *a nullity.*" (Italics supplied.) *Greaves* v. *Houlton Water Co.,* 143 Me. 207, 213.

Section 2, 4 and 5 cannot well be treated separately or apart from the remaining provisions. The Act purports first, to immunize "Forest Crop Land" from legislative power ever to change or repeal its tax status or liability by the device of an asserted contract between the State and the owner through a period of fifty years, unless sooner terminated, and second, to set for the life of such contract a tax, designated "acreage share," on the land without regard to just value. The Legislature cannot so suspend or surrender its power to tax under the Constitution.

QUESTION (4): Do the provisions of Section 4 of Legislative Document 1271 delegate legislative power to the Commissioner of Inland Fisheries and Game in violation of Section 1 of Part First of Article IV of the Constitution of Maine?

ANSWER: We answer in the affirmative.

No reference is made to the existing fish or game laws or administrative standards. No general policy of regulation

or control is set forth in the document as to hunting or fishing on the lands concerned. There appears no legislative direction ascertaining or determining the duties imposed by the document upon the Commissioner of Inland Fisheries and Game or what ministerial acts are authorized and necessary for the performance of such duties. *McKenney* v. *Farnsworth*, 121 Me. 450.

QUESTION (5): Would House Paper 902, Legislative Document 1271 "An Act Providing for Severance Taxation of Certain Natural Resources," if enacted by the Legislature, be constitutional?

ANSWER: We believe our answers to the foregoing specific questions will be sufficient for the purposes of your inquiry. We cannot well anticipate all of the questions that could arise under the Act in its present form.

Dated at Augusta, Maine, this 5th day of May, 1959.

Respectfully submitted:

ROBERT B. WILLIAMSON
DONALD W. WEBBER
WALTER M. TAPLEY, JR.
FRANCIS W. SULLIVAN
F. HAROLD DUBORD
CECIL J. SIDDALL