Thomas E. EASTLER, et al.

v.

STATE TAX ASSESSOR, et al.

Supreme Judicial Court of Maine.

Argued Sept. 20, 1985.

Decided Oct. 16, 1985.

Verrill & Dana, Charles L. Cragin (orally), Paul F. Driscoll, Portland, for plaintiffs.

Crombie J.D. Garrett, Asst. Atty. Gen., (orally), Augusta, for defendants.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

The eight named plaintiffs-landowners filed suit on December 28, 1983, in the Superior Court, Kennebec County, challenging the validity of the tax imposed by the Forest Fire Suppression Act (Act), 36 M.R.S.A. §§ 2711–2714 (Supp.1984–1985). The plaintiffs alleged, *inter alia*, that the tax contravenes article IX, § 8 of the Maine Constitution. The Superior Court ordered certification of a class consisting of all persons or legal entities subject to the tax. On June 28, 1985, after a hearing on cross-motions for summary judgment, the Superior Court entered a judgment for the plaintiffs, finding the Act unconstitutional under article IX, § 8 because it imposed a property tax not apportioned and assessed according to the value of the land. The defendants appeal from the judgment.[1] Because we agree with the finding of the Superior Court, we hold the Act unconstitutional and affirm the judgment.

## I

For nearly eight decades the Maine Legislature has been concerned with the funding of forest fire protection services in the unorganized territories and adjacent municipalities. In 1909 the Legislature created the Maine Forestry District to provide for protection from forest fires in the unorganized territories and imposed within the District an ad valorem tax on the assessed value of real estate. P.L. 1909, ch. 193, § 2. The Maine Forestry District tax continued to be an ad valorem property tax[2] until 1979 when the Legislature replaced the ad valorem tax with a flat rate of 21.3 cents per acre. P.L. 1979, ch. 646, § 1 (codified at 12 M.R.S.A. § 1601 (1981))(repealed 1983).

Continuing legislative concern with the cost of forest fire control led to the creation of the Maine Forest Fire Control Study Commission. Reporting to the Legislature in January, 1983, the Commission majority recommended that the Maine Forestry District and tax be abolished, and that in their stead the State fund one-half of the cost of forest fire control out of the general fund, while municipalities and unorganized territories would pay the other one-half through locally assessed property taxes. Maine Forest Fire Control Study Commission, Report to the 111th Legislature at 10–11, 13–14, 22–25 (Jan. 14, 1983). The Commission minority, on the other hand, proposed that owners of protected forest land pay an annual per acre tax, the rate to be determined by dividing the total forest fire control cost by the total number of protected acres. Study Commission, Report at 16–18, 26–31. The Legislative Committee on Taxation combined and modified the recommendations into L.D. 1781 (111th

---

1. In a stipulation filed on January 3, 1984, the plaintiffs-landowners agreed not to seek preliminary injunctive relief, and the defendants agreed to refund any payments made under color of the Act upon order of the Superior Court and expiration of any appeal rights. Following the entry of judgment, the parties stipulated to a plan of notification to the class, refund of payments made with interest, and payment of attorneys' fees. The Superior Court on July 17, 1985, ordered notification, refund of payments with interest, and attorneys' fees. These stipulations and the court's order are not in issue on appeal.

2. *Sandy River Plantation v. Lewis,* 109 Me. 472, 84 A. 995 (1912), involved the issue of whether some landowners (those within the Maine Forestry District) could be taxed while others (those outside the District) were not. We upheld the tax on the principle that those enjoying a special benefit may be required to bear a special burden. *See generally Town of Stonington v. Town of Deer Isle,* 403 A.2d 1181, 1184–86 (Me.1979) (those enjoying a special benefit may be required to bear a heavier ad valorem tax rate).

Legis.1983). The substantial provisions of L.D.1781 were enacted by the Legislature as P.L. 1983, ch. 556 (codified as amended at 12 M.R.S.A. §§ 8902–9205–A, 9621 (Supp.1984–1985) and 36 M.R.S.A. §§ 2711–2714 (Supp.1984–1985)).

The legislation abolished the Maine Forestry District and tax. P.L. 1983, ch. 556, §§ 4–5. The present scheme for funding the cost of forest fire suppression is as follows: Municipalities and unorganized territories are responsible for one-half of the cost up to 1/2 of 1 percent of the state valuation of the municipality or territory. The state funds (or reimburses, as the case may be) the remaining cost. 12 M.R.S.A. §§ 9204, 9205, 9205–A (Supp.1984–1985). The state funding process begins with the Governor presenting to the Legislature the total projected cost of forest fire protection minus the funding expected from the municipalities and unorganized territories or other sources. 36 M.R.S.A. § 2711(2)(A). The Legislature makes a final determination of the projected cost minus other expected funding. *Id.* The State Tax Assessor adds to the resulting figure the amount appropriated by the Legislature for administration of the tax and then divides the total in half. § 2711(2)(B)(Special Pamph. 1984–1985). The resulting amount is then divided by the acres subject to the tax to determine the tax per acre. *Id.* The per acre tax is multiplied by the number of protected nonexempt acres owned by each person to determine the amount of the tax assessed against each owner. *Id.* In short, the statutory provisions create three sources of funding. Municipalities and unorganized territories pay an initial amount up to a limit based on a percentage of valuation. The remainder of the cost is borne one-half by the State out of the general fund and one-half by a per acre tax on protected land. At the time the legislation

was proposed, the Legislative Committee on Taxation expected that each source would bear approximately ⅓ of the total cost of forest fire control. L.D.1781, Statement of Fact (111th Legis.1983).

An owner of protected land pays a per acre rate that is standard throughout the state and is not based on the value of the land. *See* 36 M.R.S.A. § 2711(2)(B). "Protected land" is defined as:

forest land and other undeveloped land such as blueberry barrens, swamps, bogs, undeveloped pastureland or brushland. It does not include federal, municipal or state-owned land.

36 M.R.S.A. § 2711(1)(Supp.1984-1985). Each owner of protected land is entitled to an exemption of 500 acres of land in each municipality or unorganized territory. § 2711(1–A) (Special Pamph.1984–1985).[3] Thus, the owner pays the per acre tax only on the unexempted acres of protected land within any given municipality or territory. The statute expressly characterizes the tax as an excise tax. §§ 2711(1), (2)(B); 2714(1). The tax is enforceable through a lien that attaches to the land when the tax becomes due. § 2714(2).

## II

In the case at bar there is no contention that the Act involves the levying of a tax that does not serve a legitimate public purpose,[4] or that those enjoying a special benefit may not in appropriate circumstances be required to bear a heavier burden under an ad valorem tax.[5] The single issue is whether, as the plaintiffs allege, the Act violates article IX, § 8 of the Maine Constitution because it imposes a tax on ownership of property that is not apportioned according to the value of the land, or, as argued by the defendants, the tax is imposed on the commercial use of property and is, therefore, an excise tax not subject to the consti-

---

**3.** As originally enacted, section 2711 provided a 100-acre exemption. P.L. 1983, ch. 556, § 21. The Legislature in 1984 increased the exemption to 500 acres. P.L. 1984, ch. 855, § 9 (codified at 36 M.R.S.A. § 2711(1–A) (Special Pamph. 1984–1985) ).

**4.** *See* Me. Const. art. IV, pt. 3, § 1; *Common Cause v. State,* 455 A.2d 1, 15–26 (Me.1983).

**5.** *See supra* note 2.

tutional requirements for a valid property tax.

Article IX, § 8 provides in pertinent part: All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof.

██ This constitutional provision establishes two requirements for a valid property tax: a valuation requirement and an apportionment requirement. Under the valuation requirement the tax-levying authority must determine the market value of the property. *See Shawmut Inn v. Town of Kennebunkport*, 428 A.2d 384, 389 (Me. 1981) (" 'Just value' is the equivalent of 'market value.' "). Under the apportionment requirement the taxing authority must then apportion the tax equally according to the market value. The purpose of the two constitutional requirements is to equalize public burdens so that a taxpayer contributes to the entire tax burden in proportion to his share of the total value of all property subject to the tax. *See Opinion of the Justices*, 155 Me. 30, 47, 152 A.2d 81, 89 (1959).

██ However, the Maine Constitution contains no limitation on the legislative imposition of taxes on business, *State v. Stinson Canning Co.*, 161 Me. 320, 325, 211 A.2d 553, 556 (1965), if the tax is for a public purpose and is assessed uniformly upon all business of a like kind. *State v.*

*Western Union Telegraph Company*, 73 Me. 518, 526–27, 531 (1882). Such a tax on business is commonly called an excise tax. *See State v. Hamlin*, 86 Me. 495, 503–504, 30 A. 76, 79 (1894).

██ The question thus becomes one of distinguishing an excise tax from a property tax. A property tax is levied on the ownership of property, *Dawson v. Kentucky Distilleries & Warehouse Co.*, 255 U.S. 288, 294, 41 S.Ct. 272, 275, 65 L.Ed. 638, 646 (1921); *Flynn v. City of San Francisco*, 18 Cal.2d 210, 215, 115 P.2d 3, 6 (1941), while an excise tax may only be levied on a use of the property.[6] *Bromley v. McCaughn*, 280 U.S. 124, 136, 50 S.Ct. 46, 47, 74 L.Ed. 226, 229 (1929); *Western Union*, 73 Me. at 526; *Weaver v. Prince George's County*, 281 Md. 349, 358–59, 379 A.2d 399, 404 (1977); *John Wanamaker, Philadelphia v. School District*, 441 Pa. 567, 572–75, 274 A.2d 524, 526–27 (1971).[7]

The question of distinguishing the two types of taxes becomes difficult, however, when the amount of the purported excise tax is measured by the property in the hands of the taxpayer. In *Western Union*, we employed a two-part test in finding that a 2-1/2 percent tax on the value of telegraph company equipment was an excise tax. 73 Me. at 518–19. First, we looked to the method of establishing the tax rate, regarding the method as "significant," but "not conclusive." *Id.* at 527.

---

6. An excise tax, of course, is not confined to a tax on business, but also embraces any tax imposed on a particular use of property or a particular power over property incidental to ownership. *State v. Hamlin*, 86 Me. 495, 504, 30 A. 76, 79 (1894) ("the right or privilege of taking property, by will or descent"); *Bromley v. McCaughn*, 280 U.S. 124, 136, 50 S.Ct. 46, 47, 74 L.Ed. 226, 230 (1929) ("the exercise of a single one of those powers incident to ownership, the power to give the property owned to another"); *City of Glendale v. Trondsen*, 48 Cal.2d 93, 106, 308 P.2d 1, 8 (1957) ("the occupancy of real property for the privilege of accumulating rubbish and having available collection services therefor").

7. We have occasionally defined an excise tax as one imposed on the "performance of an act, the

engaging in an occupation or the enjoyment of a privilege." *State v. Stinson Canning Co.*, 161 Me. 320, 325, 211 A.2d 553, 556 (1965); *Opinion of the Justices*, 335 A.2d 904, 911 (Me.1975); *Opinion of the Justices*, 155 Me. 30, 46, 152 A.2d 81, 89 (1959). The definition is consistent with occasional dicta of this court that the exactions imposed on the right of entering a particular occupation or profession constitute excise taxes. *State v. Hamlin*, 86 Me. 495, 502–503, 30 A. 76, 79 (1894). We have recently held, however, that exactions imposed for purposes of regulating a particular occupation and intended to cover the cost of administering the regulation are license fees and not taxes. *Maine Milk Producers, Inc. v. Commissioner of Agriculture*, 483 A.2d 1213, 1219 (Me.1984); *Board of Overseers of the Bar v. Lee*, 422 A.2d 998, 1004 (Me.1980).

We noted that under a property tax the rate is usually fixed by dividing the total sum to be raised by the total valuation of the property. This ratio becomes the tax rate. The telegraph company taxation act, however, fixed the rate by law. *Id.* The rate was then applied to the value of the telegraph company's equipment, but that value was simply taken as an arbitrary measure of the value of the franchise or business. *Id.* at 531. Second, we looked to what was being taxed, the subject matter of the taxation. The act taxed only such property "as is used in the telegraph business" and "only while it is in use for this business." *Id.* We concluded, therefore, that the tax was not on the property as such, but on the business or franchise. As a levy on the franchise, the tax was not subject to article IX, § 8 of the Maine Constitution. *Id.* at 530–31.

In subsequent cases, we have continued to apply the two-part test, looking to the subject matter of the tax and examining the method of taxation not as an independent factor but as a key to determining what was in fact the subject matter. *State v. Maine Central Railroad Co.,* 74 Me. 376, 382–83 (1883); *Hamlin,* 86 Me. at 503–504, 30 A. at 79–80; *State v. F.H. Vahlsing, Inc.,* 147 Me. 417, 420, 88 A.2d 144, 146 (1952); *Stinson Canning Co.,* 161 Me. at 323–24, 211 A.2d at 555. *See also Opinion of the Justices,* 123 Me. 573, 577, 121 A. 902, 904 (1923).

The constitutionality of the Forest Fire Suppression Act must be examined in light of this two-part test. The plaintiff-landowners who challenge its constitutionality bear a heavy burden of persuasion, since all acts of the Legislature are presumed constitutional. *Maine Milk Producers, Inc. v. Commissioner of Agriculture,* 483 A.2d 1213, 1218 (Me.1984); *State v. Hudson,* 470 A.2d 786, 789 (Me.1984). In light of this presumption we give deference to the legislative characterization of the tax, 36 M.R.S.A. § 2711(1), (2)(B), as manifesting an intention to impose a valid excise tax. *Weaver,* 281 Md. at 356, 379 A.2d at

403; *Associated Industries of Massachusetts, Inc. v. Commissioner of Revenue,* 378 Mass. 657, 667–68, 393 N.E.2d 812, 818 (1979). *See also Opinion of the Justices,* 335 A.2d, 904, 907, 912 (Me.1975). *But cf. Western Union,* 73 Me. at 530 ("the name [given the tax] is not material"); *accord Dawson,* 255 U.S. at 292, 41 S.Ct. at 274, 65 L.Ed. at 645.

We find, however, that on balance the tax has a predominance of characteristics indicative of a property tax. The rate is determined by dividing one-half of the total state fire suppression cost by the total acreage of the protected land. 36 M.R.S.A. § 2711(2)(A) (Supp. 1984–1985), (B) (Special Pamph. 1984–1985). This method of rate determination commonly characterizes a property tax. *Hamlin,* 86 Me. at 530, 30 A. at 79–80; *Western Union,* 73 Me. at 527. In addition, the enforcement of the tax statute through a direct lien upon real estate, 36 M.R.S.A. § 2714(2) (Supp.1984–1985), suggests a property tax. *Cf. Weaver,* 281 Md. at 364, 379 A.2d at 407 (finding that a multi-family occupancy tax which did *not* provide for a lien was an excise, not a property tax). We regard these characteristics as "significant," but "not conclusive." *Western Union,* 73 Me. at 527.

The central issue remains the subject matter of the tax. It is levied against the ownership of protected land. *See* 36 M.R.S.A. § 2711(1) ("assessed against persons owning protected land"). In isolation such a levy would be a tax on real estate. *See Opinion of the Justices,* 155 Me. at 47, 152 A.2d at 89.

Mindful, however, that an excise tax levied on a business is frequently measured by the amount of property in the taxpayer's hands, *see, e.g., Western Union,* 73 Me. 518, we examine the tax to determine whether it is levied on a particular business. The defendants argue that the tax is levied on commercial forestry. Contrary to the defendants' contentions, the legislative history does not reveal a focus on commercial forestry. The majority of the Maine Forest Fire Control Study Commission spe-

cifically found that numerous and diverse interests benefitted from state forest fire control services and rejected a specifically focused tax because of the Commission's inability to determine which interests received the bulk of the benefits. Study Commission, Report at 11. The Commission minority found that forest landowners benefitted from the services and should be specially taxed, but did not differentiate between ownership of commercial and non-commercial forest land. Study Commission, Report at 16, 18. The Statements of Fact accompanying L.D. 636 (the minority recommendation), L.D. 637 (the majority recommendation), and L.D. 1781 (the Legislative Committee on Taxation's redrafting and combining of L.D. 636 and L.D. 637) do not contain any reference to commercial forestry.

The statute itself does not focus on commercial forestry. The definition of "protected land," 36 M.R.S.A. § 2711(1), includes land of varied economic use (forests, blueberry barrens, [peat?] bogs, and pastureland) and land of indeterminate or no economic use (swamps, brushland). "Forest land" itself is not defined in terms of any use. *Id.* The broad inclusion under the definition of "protected land" strongly indicates that the tax is levied on the ownership of property and is not focused on a particular use. *Cf. Opinion of the Justices,* 335 A.2d at 912 (definition of commercial forest land implicit in proposed Act).

The defendants contend, however, that the non-forest lands are either significant, established sources for forest fires or add difficulty to the fighting of forest fires and therefore a rational basis is established for their inclusion as "protected lands." They *further contend* that the efficient administration of the tax requires avoidance of the gross burdens that would result if it were necessary to differentiate forest and non-forest lands within the huge expanse of territory encompassed by the tax. The defendants' contentions advance the proposition that all these lands need fire protection and point up the absence of commercial focus of the tax.

The defendants also seek to find a commercial focus for the tax by looking to the 500–acre exemption. They contend that in light of the exemption it is reasonable to presume the principal taxpayers are owners of large commercial forest tracts. This contention fails for two reasons. First, the Act imposes the tax on tracts in excess of 500 acres whether the tracts comprise forest land or not. Second, even if the tracts comprise forest land,[8] the Act does not distinguish between land capable of commercial forestry use and land that is not. *See* 36 M.R.S.A. § 573 (Supp.1984–1985) ("forest land" is defined under the Tree Growth Tax Law as "land used primarily for growth of trees to be harvested for commercial use," but excluding land that is "unsuitable for growing a forest product or for harvesting for commercial use even though [such land] may exist within forest lands"). Therefore, we do not agree with the defendants that the exemption provides the Act with a commercial focus based on use. *See Western Union,* 73 Me. at 527 ("only while it is in use for the business"); *United States v. Billings,* 232 U.S. 261, 281, 34 S.Ct. 421, 424, 58 L.Ed. 596, 605 (1914) (active and actual, not potential use of foreign-built yachts); *John Wanamaker, Philadelphia,* 441 Pa. at 572–75, 274 A.2d at 526–27 (business use occupancy limited to actual square footage and number of days used).

---

**8.** The defendants point to published United States Forest Service statistics showing that 86% of the land area of the State consists of "timberland," defined as "[f]orest land producing or capable of producing crops of industrial wood (more than 20 cubic feet per acre per year) and not withdrawn from timber utilization." D. Powell & D. Dickson, *Forest Statistics for Maine*

*1971 and 1982* at 9, 189 (U.S. Dep't Agric. Forest Serv. Resource Bulletin NE–81) (1984). We note that the timberland category includes both actual and potential use ("producing or capable of producing") and further note that, in any event, the Forest Service's definition cannot, of course, substitute for a statutory definition of "forest land."

An examination of the disposition of the funds raised by the tax further demonstrates its imposition on ownership rather than use of the land. The amount to be raised is determined by the projected cost of forest fire protection. 36 M.R.S.A. § 2711(2)(A). However, if the projected cost exceeds the actual cost, there is no provision for the disposition of the excess funds. Unlike the potato tax in *F.H. Vahlsing,* 147 Me. 417, 88 A.2d 144, or the sardine tax in *Stinson Canning,* 161 Me. 320, 211 A.2d 553, the funds are not dedicated to the needs of a particular industry.[9] *See* 36 M.R.S.A. § 4571 (1978 & Supp.1984–1985) (dedication of potato tax funds); 36 M.R.S.A. § 4699 (1978 & Supp.1984–1985) (dedication of sardine tax funds). *See also* 36 M.R.S.A. § 4311–A (Supp.1984–1985) (dedication of blueberry tax funds); 36 M.R.S.A. § 4511 (Supp.1984–1985) (dedication of milk tax funds). This lack of dedication is another indication that the tax is not an excise tax.

We also do not agree with the defendants' contention that the validity of the Act can be preserved by severance of a portion of it. The defendants urge that if the words "and other undeveloped land such as blueberry barrens, swamps, bogs, undeveloped pastureland or brushland" are stricken from 36 M.R.S.A. § 2711(1), the remaining portion of the Act provides for a valid excise tax imposed on the privilege of engaging in a commercial activity. *See* 1 M.R.S.A. § 71(8) (1979) (if any provision of a statute is invalid, the invalidity shall not affect other provisions that can be given effect without the invalid provision). However, if these words were stricken, there would still be no focus on the business of commercial forestry since "forest land" would remain undefined. Additionally, the provisions pertaining to rate determination, enforcement, and disposition of any excess funds continue as strong indicators that the tax is levied on the ownership of property.

The absence of a focus on a business or use and the presence of other features generally characteristic of a property tax, lead us to conclude that the tax is imposed on ownership of property. We hold, therefore, that the Forest Fire Suppression Act violates article IX, § 8 because it imposes a property tax not apportioned and assessed according to the value of the land.

The entry is:

Judgment affirmed.

---

9. Challenges to purported excise taxes have occasionally involved the allegation that the tax is not only an invalid property tax, but is also not levied for a valid public purpose. We rejected such a challenge to the sardine and potato taxes, finding that any excess amount raised by each was dedicated to marketing and research serving an important Maine industry and that such functions served a valid public purpose. *State v. Stinson Canning Co.,* 161 Me. 320, 321, 324–28, 211 A.2d 553, 554, 555–58 (1965) (sardine tax); *State v. F.H. Vahlsing, Inc.,* 147 Me. 417, 418, 423–31, 88 A.2d 144, 145, 147–51 (1952) (potato tax). *See also Common Cause v. State,* 455 A.2d 1, 22–24 (Me.1983) (discussing *Stinson Canning* and *Vahlsing* as part of the evolution of the Maine public-purpose doctrine).