## Southern Lines Linen Supply Co. et al. v. City of Corbin et al.

(Decided March 25, 1938.)

788

THOMAS F. YOUNG, E. B. WILSON and HIRAM H. OWENS for appellants.

ZEB A. STEWART and R. C. BROWNING for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

The question involved is the validity of an ordinance of the City of Corbin, of date November 3, 1936. Omitting inconsequential parts, it reads as follows:

"All persons, partnerships, firms or corporations, * * * engaged in collecting, distributing, furnishing, leasing or exchanging for hire, replacing any and all materials or goods of every description or kind, cotton, woolen, linen, dry-cleaning, or washed fabrics, for soiled or used materials and exchanging same in the City of Corbin, shall pay to the city * * * an annual tax in the sum of $200.00 for such privilege."

A section following the above provides for a penalty of $5 for each day of operation without the required license.

On November 26, 1936, plaintiffs filed petition in the Whitley court, asserting that the company was a corporation, with its chief place of business in Knoxville, Tenn. The business, commonly known as a "linen supply service," was conducted in the following manner: Appellant company operates its laundering plant in Knoxville. It owns a large supply of towels, bed sheets, pillow cases, table cloths, napkins, barber and waiter coats, and such like. Starting its trucks from Knoxville they visit Middlesboro, Pineville, Barbourville, Corbin, Williamsburg, then through Jellico, Tenn., to its home city. At each of these places it furnishes to hotels, barber shops, restaurants, etc., a supply of the needed articles, such as above mentioned, at a rental charge. Later it returns, takes up the soiled articles, leaving a supply in replacement, carrying the soiled articles to its home laundry for cleansing; these trips being made twice each week. Plaintiff began its operations in the spring of 1936, and apparently there was in effect at the time no effective applicable ordinance, though one providing for a license to "laundry and laundry agencies, each $25.00." The local laundry raised an objection to appellant operating in Corbin, and the original occupational tax ordinance was supplemented by the one quoted, and now attacked.

After the adoption of the "linen supply" ordinance, the appellant paid a half year's license, but when this expired it continued to operate without paying the required license fee of $200. Its truck driver was arrested on more than one occasion, and appellant finally concluded to test the validity of the ordinance rather than to comply by paying the fee. On November 26, 1937, the company and its traveling agent, Goddard, filed petition in equity to enjoin the city, its police chief, and police judge from molesting its agents. The petition and amendments thereto sufficiently alleged facts necessary to state a cause, and a supporting basis for injunctive relief.

It was contended, first, that the exaction of the license fee was for police purposes, and that as such its effect was to exact of appellants a sum of money far in excess of an amount necessary to properly regulate its business. By amendment, it was pleaded that should it be determined the fee was not for regulatory purposes, but intended solely for revenue purposes, it was nevertheless void on two grounds: (1) The fee was so excessive as to be confiscatory; and (2) its enforcement was such as to work a decided discrimination against it in favor of a local company engaging in the same sort of business. It prayed for a temporary restraining order, and, on hearing, a permanent injunction.

Appellee demurred to the petition, and, without waiving, answered. The answer was a general denial of the allegations of the petition. The court overruled defendants' demurrer to the petition as amended, and uncontroverted pleadings were, by agreement, controverted of record. The clerk of the court upon the filing of the petition granted plaintiff a temporary restraining order. The case came before the court upon defendants' motion to discharge the temporary order, and on that motion the then presiding judge heard proof; shortly after the taking of proof, and before passing on the motion, Judge Senters died. By agreement the proof, which had been taken by the official stenographer, and reduced to type, was submitted to the succeeding judge on plaintiffs' motion to dissolve the restraining order; to grant permanent injunction; for final determination on merits. The court dissolved the temporary restraining order, overruled the motion for a temporary injunction, and, holding that plaintiffs were not entitled to the relief, denied the prayer for a

permanent injunction and dismissed their petition, to which ruling exceptions were taken, appeal prayed and granted.

On the appeal the argument of counsel for appellants is directed mainly to contentions that: (1) The fee exacted is so large as compared with the profits from the business done by appellants in Corbin (the taxing district) as to make the requirement unreasonable, prohibitive, and confiscatory; and (2) that because it is not enforced with uniformity, i. e., excepting, not from the provisions of the ordinance, but from its effect by failure of enforcement against others engaged in similar business, it results in such discrimination in fact as makes it invalid.

The facts developed below may be briefly stated as follows: A city officer was introduced by defendants, ostensibly for the purpose of identifying the ordinances. On cross-examination he said that at the time the original ordinance was supplemented by the November 3d ordinance, no other concern was then, or now, doing the particular sort of business in Corbin, intended to be reached by the contested ordinance. He said it was drawn because the Weed Laundry (a local concern) was objecting to appellants' carrying on business "without a license." The Weed Laundry was paying a license of $25. The ordinance was purposed to raise revenue "to meet the operating expenses of the city." It developed that there had been an attempt to reach an agreement whereby the Weed Laundry would pay expenses of testing the validity of an ordinance if the license fee for the "service" business should be fixed at $600. The appellant, as said, upon passage of the ordinance, took out license for six months, at the $200 rate, but upon its expiration refused to renew; warrants of arrest for appellant Goddard followed.

Appellants introduced the manager of its business, who described its conduct substantially in the manner as hereinbefore set out. He testified that the gross amount of the Corbin business was $65 per month, or $780 per year; that the expenses of obtaining and completing the Kentucky work was about 93 per cent. of the gross, and fixed the net profit from the Corbin business at 7 per cent., or approximately $54.60 per year, leaving out of consideration, in estimating expenses, the $200 per year assessed by the ordinance. The out-

lay he said consisted of "standard expenses." This witness also stated that the Weed Laundry was engaged in the business of leasing to its customers, towels, pillow cases, sheets, barber supplies, and uniforms. He also stated that his driver or drivers had been arrested for operating without license and was under arrest at the time of the instant suit. He expressed a willingness to pay a reasonable license fee, and said that the six months' license fee had been paid under protest. He showed that the fee exacted in towns in which business was obtained on the round trips were much less than that imposed by the Corbin ordinance. Barbourville collected a $35 fee, and Middlesboro, $25. He did not recall the other cities' fees, but thought the company paid none in Jellico or Pineville.

Appellants also introduced the owner of the Weed Laundry. With some hesitancy, but nonetheless positively, he said that his concern was engaged in "leasing, renting, hiring or exchanging linens, towels, etc.," and had been so engaged for about one year, and that his license was $40 "for operating the Weed Laundry." He also said that while he was doing a business similar to appellants, he was not paying the $200 prerequisite fee, but added that his other taxes paid to the City of Corbin far exceeded the $200. He further said that from the "linen leasing business" he had made no profit. There were no concerns other than his and appellants' engaged in the "linen leasing" business in Corbin.

At the outset we may say that there is no contention here that the classification is not a proper one. Counsel for appellees, in brief, treats the question at issue as if it were relating solely to improper, illegal, or unconstitutional classification, relying mainly on the cases of Williams v. City of Bowling Green, 254 Ky. 11, 70 S. W. (2d) 967, and Richmond Linen Supply Company v. City of Lynchburg, 160 Va. 644, 169 S. E. 554, affirmed per curiam by the Supreme Court in re Richmond Linen Supply Co., 291 U. S. 641, 54 S. Ct. 437, 78 L. Ed. 1039. As we read the Virginia case we find that it deals almost solely with the questions of classification. In the Williams Case, supra, the chief question discussed related to alleged illegal classification. We held in that case that an ordinance imposing a license fee of $200 for soliciting the business of dry

cleaning, without operating a plant in the city, was not arbitrarily discriminatory when it imposed a fee of only $25 on the same business operated in the city. The question of whether the license tax was or was not confiscatory was not discussed. The conclusions reached in that case are sound, but here we are called upon to consider only the question as to whether or not the amount of the license tax is such that its payment would prohibit, and thus destroy an undoubtedly legitimate business; not such a business as might be prohibited by the method of assessing a prohibitive tax. Commonwealth v. McCray, 250 Ky. 182, 183, 61 S. W. (2d) 1043.

Here the business for which the tax was exacted was such business as was carried on in the City of Corbin. In one case the same character of business was carried on by a local concern, in the other by a foreign, but the business taxed was such as was carried on in the city. However, we need discuss only one proposition, and that is, is the tax so excessive as to consume the profits to such an extent that the business would by reason thereof be compelled to close? Mr. Cammon of the Weed Laundry admitted that though the laundry had operated the same business for one year, it had resulted in no profit. We may take it that had the laundry obtained the same amount of business during that period, and had paid, or included in expenses the $200 license fee, the result would have been a loss. There is neither denial of, nor attempt to deny, the testimony of the manager of the appellants' business in respect to the profit resulting from the Corbin business. In such case we must accept the testimony as conclusive on this point.

This case, or rather the one question presented which we find it necessary to decide, is to our mind controlled by the case of Sallsbury v. Equitable Purchasing Company, 177 Ky. 348, 197 S. W. 813, 814, L. R. A. 1918A, 1114. In that case the city, by ordinance, fixed a fee of $400 on persons, firms, etc., engaged in the business of loaning money on salaries or wages (small loan business). While the pleading in the Sallsbury Case is, perhaps, a little stronger in regard to the "purpose" of the ordinance, it was alleged by appellants here that the purpose of the ordinance was to confiscate its legitimate business. It was shown by the proof in the Sallsbury Case that the total net earnings of appellee for the year preceding

the passage of the ordinance was $1,207.95, which was "more than the net earnings of any other person engaged in like business in the city of Ashland." The fee exacted was approximately 30 per cent. of the net profit. In the case at hand the fee exacted allowed no profit. After citing many cases upholding the principle enunciated in the Sallsbury Case, referring particularly to the case of City of Louisville v. Pooley, 136 Ky. 286, 124 S. W. 315, 25 L. R. A., N. S., 582, we quoted from the latter case as follows:

"While it is true that the amount of a license fee imposed as a tax is ordinarily a question for the taxing power, and the courts will not interfere with its discretion, yet this court is committed to the doctrine that this rule is subject to the limitation that the tax imposed should not amount to a prohibition of any useful or legitimate occupation. Hall v. Commonwealth, for Use, etc., 101 Ky. 382, 41 S. W. 2, 19 Ky. Law Rep. 578; Fiscal Court of Owen County et al. v. F. & A. Cox Company, 132 Ky. 738, 117 S. W. 296, 21 L. R. A. (N. S.) 83.

"There can be no doubt that the business of loaning money on salaries or chattels is a useful, legitimate occupation."

The writer of the Sallsbury Case then resumed:

"While the amount of the license as compared with the profits made by those engaged in the taxed occupation cannot be accepted as a true criterion in determining the validity of the ordinance in all cases, still, when it is admitted, as is done here, that the license fee exacts practically one-third of the net earnings of the largest business of any individual engaged in the taxed occupation within the taxing district, we cannot get away from the impression necessarily created that the license is prohibitive and therefore illegal. Under the facts and circumstances of this case, and the admissions of the allegations of the petition, and the authorities, supra, we feel impelled to hold that section 1 of the ordinance is invalid, because it is unreasonable and prohibitive."

While we had under discussion in Martin v. Nocero Ice Cream Company, 269 Ky. 151, 106 S. W. (2d) 64, a form of taxation differing from that considered here,

794

in considering the effect of the exaction, from the standpoint of prohibition or confiscation of a legitimate business, we applied the principle laid down in the Sallsbury Case, and held the taxing act void on the same ground. The Martin Case cites numerous cases upholding the principle, and we need do no more than refer to these citations, except to say that the principle was recognized in Commonwealth v. McCray, supra, which dealt with the question of an exorbitant tax, clearly shown to have been assessed for a prohibition purpose.

Since it is not denied that the exaction of the fee in the instant case would, if paid, amount to more than the total profit of the business derived from its operation in the taxing district of Corbin, and there being sufficient proof on which to base the conclusion that the ordinance was passed to prohibit, we are compelled to adopt the views expressed in the opinions referred to above, and to hold that the court below should have, on the sole grounds discussed, granted the relief sought.

Judgment reversed, with directions to set aside the judgment appealed from and by proper order sustain appellants' motion for and grant the injunction.

Whole court sitting.