STATE OF MAINE
*vs.*
STINSON CANNING COMPANY

Kennebec.   Opinion, July 12, 1965.

*Ralph W. Farris,*
*Jon R. Doyle, Asst. Atty. Gen.,* for Plaintiff.

*Richard B. Sanborn,* for Defendant.

SITTING:   WEBBER, TAPLEY, SULLIVAN, MARDEN, RUDMAN, JJ.   WILLIAMSON, C. J., did not sit.

RUDMAN, J.   On report on an agreed statement of facts. This is an action to recover the amount of a tax assessed

against the defendant corporation by virtue of the Sardine Tax Law, Title 36, M. R. S., Sections 4691-4700.

The Defendant is a licensed and certified packer of sardines in Prospect Harbor, Maine, and was engaged, and has continued to be so engaged since the enactment of the Sardine Tax Law. It is admitted that the Defendant packed 3,345 cases of sardines during the month of June 1964 and the tax is unpaid. The State Tax Assessor levied an assessment for the tax due against the Defendant in the amount of $836.25.

The Defendant contends that the Sardine Tax Law is unconstitutional for the following reasons:

"1. Tax is a property tax not equally apportioned and assessed rather than an excise tax.

"2. An advertising tax for non-agricultural products is illegal.

"3. An advertising tax for processed or manufactured products is illegal.

"4. The tax is for a private rather than a public purpose.

"5. It is illegal for the State to engage in the business of buying and selling sardines."

The Sardine Tax Law was first enacted by the Ninety-fifth Legislature. Public Laws 1951, Chapter 2.

The preamble reads as follows:

"Whereas, the packing and merchandising of sardines is one of the most important industries of the state and a benefit to the public generally; and

"Whereas, it is vitally necessary to furnish employment and enhance the livelihood of the coastal and other people of Maine; and

"Whereas, legislation is necessary to protect the public health and welfare and to promote and con-

serve the prosperity and welfare of the people of the state by fostering and promoting better methods of production, packing, merchandising and advertising in the sardine industry of this state; and "Whereas, in the judgment of the legislature, these facts create an emergency, within the meaning of the constitution of Maine, and require the following legislation as immediately necessary for the preservation of the public peace, health and safety;"

The purposes of the Act are stated in Section 4691, as follows:

"The packing of sardines is one of the most important industries of the State, and this chapter will protect the public health and welfare, stabilize the industry and conserve and promote the prosperity and welfare of the State by fostering and promoting better methods of production, packing, merchandising and advertising in the sardine industry of this State."

The declared purposes of the Act are to be accepted as true unless incompatible within its meaning and effect.

"The court is bound to assume that, in the passage of any law, the Legislature acted with full knowledge of all constitutional restrictions and intelligently, honestly and discriminatingly decided that they were acting within their constitutional limits and powers. That determination is not to be lightly set aside. It is not enough that the court be of the opinion that had the question been originally submitted to it for decision it might have held the contrary view. The question has been submitted in the first instance to the tribunal designated by the Constitution, the Legislature, and its decision is not to be overturned by the court unless no room is left for rational doubt. All honest and reasonable doubts are to be solved in favor of the constitutionality of the act. This healthy doctrine is recognized as the settled policy of this court." *Laughlin* v. *City of Portland*, 111 Me. 486, 489.

See *Morris* v. *Goss,* 147 Me. 89; *Crommett* v. *City of Portland,* 150 Me. 217; *State* v. *The Fantastic Fair, et al.,* 158 Me. 450.

Every intendment must be made in favor of the validity of the law, if it appears that the means adopted are suitable to the end in view, impartial in operation, not unduly oppressive upon the individuals, and has a real and substantial relation to their purpose.

It cannot be reasonably contended that the protection and promotion of the sardine industry in Maine is not of public concern or that the Legislature may not determine within reasonable bounds what is necessary for the protection and expedient for promotion of the industry.

We take judicial notice that the area where sardine factories are largely located was at the time of the passage of the Act and still is an economically depressed area. The opportunities for employment are limited and though the sardine industry is one of the lesser industries in the State, it does furnish employment to a substantial number, who otherwise would be unemployed.

The Defendant contends that the sardine tax was assessed as a property tax in violation of Article IX, Section 8, of the Constitution of Maine, which provides:

"All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally, according to the just value thereof; but the Legislature shall have power to levy a tax upon intangible personal property at such rate as it deems wise and equitable without regard to the rate applied to other classes of property."

It is clear that the tax is not upon the sardine itself as property but is an excise upon the privilege of packing sardines and is not prohibited by Article IX, Section 8. It is not measured by value and is not laid directly upon the property itself. The total amount of the tax paid is di-

rectly determined by the extent to which this privilege is exercised. The tax has none of the attributes of an ad valorem tax. It is not measured by value. The value of packed sardines may fluctuate as it will, but the amount per case of the tax remains constant.

Whenever it is apparent from the scope of the Act that its object is for the benefit of the public, and that the means by which the benefit is to be attained are of a public character, the Act will be upheld even though incidental advantage may accrue to individuals beyond those enjoyed by the general public.

It is for the Legislature to determine the manner and extent to which it will exercise this function of government and that its determination upon that point is limited by its own discretion.

In determining whether any particular measure is for the public advantage, it is not necessary to show that the entire body of the State is directly affected, but it is sufficient that a portion of the State shall be benefited thereby.

The State is made up of its parts, and those parts have such a reciprocal influence upon each other that any advantage which accrues to one of them is felt more or less by all of the others.

A Legislature that should refrain from all legislation that did not equally affect all industries of the State would signally fail in providing for the welfare of the public.

"The principle that the imposition of both an excise tax on a privilege, activity, occupation, or calling and an ad valorem tax on property used in the exercise, conduct, or performance of such calling, privilege, or activity is not invalid as double taxation is generally recognized. The principle is bottomed on the theory that the subject of ad valorem taxation is property and that of excise taxation is a right or privilege, and that conse-

quently, the requirement frequently made essential to the existence of double taxation in the unconstitutional sense, namely, that both impositions must be against the same taxable subject, is lacking. The rule has received application in many diverse factual situations. Thus, it is well settled that a state may collect an ad valorem tax on property used in a calling and at the same time impose a license tax on the pursuit of that calling." 51 Am. Jur., page 345.

"It is to be presumed, however, that when the legislature levies a tax and appropriates the proceeds thereof for a purpose which is declared to be for the public welfare that it has acted in good faith and within its constitutional powers. Unless it has clearly exceeded its constitutional powers in so doing, its action must be sustained. All rational doubts as to the constitutionality of statutes must be resolved in favor of the constitutionality thereof. Although it is the duty of the court to declare acts which transcend the powers of the legislature void, this judicial duty is one of gravity and delicacy and it is only when there are no rational doubts which may be resolved in favor of the constitutionality of the statute that the inherent power of the court to declare statutes unconstitutional should be exercised." *State* v. *Vahlsing, Inc.,* 147 Me. 417, 430.

We are not here concerned with a tax upon real or personal estate, but with " 'a tax imposed upon the performance of an act, the engaging in an occupation or the enjoyment of a privilege. . . . . But our Constitution contains no provision limiting the legislative imposition of excise taxes or, to use the language of the Court: Our Constitution imposes no restrictions upon the Legislature in imposing taxes upon business. *State vs. Telegraph Co.,* 73 Me., 518, 531.' " See *Opinion of Justices,* 123 Me. 576, 577, 578; *State* v. *Vahlsing,* 147 Me. 417, and *Opinion of Justices,* 155 Me. 46.

"It is generally held that a constitutional provision requiring taxation to be equal and uniform applies

only to taxes on polls and property and has no reference whatever to excises." 26 R. C. L., page 255, section 226.

The Defendant lays stress on the words "equality" and "uniformity" contained in Article IX, Section 8, of the Statutes, these are words of limitation not of prohibition. The Constitution does not prohibit the imposition of a privilege or excise tax.

Section 4695 provides:

"The packing of sardines is declared to constitute the introduction of sardines into the channels of trade.

"An excise tax of 25¢ per case, as defined in Section 4692, subsections 1 to 3, is levied and imposed upon the privilege of packing sardines."

This section of the Statute distinguishes Maine Sardine Law from legislation in other jurisdictions where the tax liability is not created until the product is placed into the channels of trade. The Statute by legislative fiat defines the packing of sardines as constituting "the introduction of sardines into the channels of trade." Section 4695.

Section 4699 of the Sardine Tax Law specifically sets forth the purposes for which the money received is to be expended "under the direction of the Maine Sardine Council with the advice and cooperation of the Commissioner of Economic Development."

It further provides for "the purchase of Maine sardines by the Maine Sardine Council through the State Purchasing Agent on a competitive sealed bid basis, and the distribution of such sardines by the Council for promotional purposes, to develop and expand foreign markets," thereby eliminating any preferential purchases and every packer being given the opportunity of bidding whenever purchases are made by the Maine Sardine Council.

It further provides for research in methods of propagating and conserving clupeoid fish. This and other activities to be under the joint direction of the Commissioner of Sea and Shore Fisheries and the Maine Sardine Council.

It goes on to provide for the "gathering, studying, classifying and distributing of information and data concerning quality, grades, standards and methods of packing and character of the manufactured sardine products, in order to determine and improve their quality and aid in merchandising and advertising them under the direction of the Maine Sardine Council with the advice and cooperation of the Commissioner of Economic Development."

The blueberry tax money is administered by the Blueberry Tax Committee of 7 members appointed by the President of the University of Maine and the money remaining, after payment of expenses incurred in collection and enforcement of the Act. Section 4311, for the purpose of conducting scientific research; extension work relating to the production, processing and marketing of blueberries through the Maine Agricultural Experiment Station and the Agricultural Extension Service of the University of Maine.

The milk tax money is administered by the Milk Tax Committee of 5 members, the Commissioner of Agriculture and 4 producers, appointed by the Commissioner of Agriculture, and the money remaining after payment of expenses incurred in collection and enforcement of the Act is, under the direction of the committee, expended as provided in Section 4501 "by the fostering of promotional, educational, advertising and research programs."

The potato tax money is administered by the Potato Tax Committee of 5 members appointed by the Commissioner of Agriculture and the money remaining, after payment of expenses incurred in collecting and enforcement of the Act. Section 4571 "by investigating and determining better

methods of production, shipment and merchandising of potatoes for advertising" and for the other purposes as enumerated in said section.

Merchandising, advertising, research, quality and quantity are all proper methods of promoting the sardine industry and in the interest of public welfare and therefore tax levied to provide funds for these purposes serve a public end.

In *State* v. *Laskey,* 156 Me. 419, 426, we said:

> "We take judicial notice of the great importance of the fishing industry in the life of our State. . . . . The wellbeing of large numbers of our citizens is directly dependent upon it. From colonial days we have drawn upon the sea and shore fisheries for a substantial part of our income and wealth.

> "The power of the Legislature 'to regulate and control such fisheries by legislation designed to secure the benefits of this public right in property to all its inhabitants' has long been unquestioned."

Equally important is the sardine industry, not only to the packer but to a large number of men and women employed in the sardine canning industry and to the number of men engaged in seining and delivering the product of their catch to the factories.

The power of the Legislature to adapt its laws to the peculiar needs of a substantial industry rests upon the same principal, viz. that is acting for the public good in its capacity as a representative of the entire State. Under this principle the Legislature has enacted the Milk Tax, Potato Tax, Quahog Tax and the Sardine Tax Law.

> "The burden being upon him who attacks a law for unconstitutionality, the courts need not be ingenious in searching for grounds of distinction to sustain a classification that may be subjected to criticism." *Middletown* v. *Texas Power & Light*

*Co.,* 249 U. S. 152, 39 S. Ct. 227, 229, 63 L. Ed. 527, 531.

If the Legislature can create an office, in the absence of specific constitutional prohibition, it may specify the means and manner of appointment without making the statute unconstitutional.

> "In offices which are created by the Legislature, where the method of appointment is not prescribed by the Constitution, The Legislature, if no limitation is put upon its power by the Constitution, can take upon itself the responsibility of selecting the persons to be appointed, or can confer the power of appointment upon public officers or boards. . . . ." *Brown* v. *Russell,* 166 Mass. 14, 25.

The tax being levied by the Legislature as an excise tax within the legislative taxing power it does not violate either the equal protection of the law, or the due process clause of the Constitution.

The entry will be

*Judgment for the State in the sum of $836.25.*