**ACE TIRE CO., INC. d/b/a Ross-Barr Scrap Metal Co.**

v.

**MUNICIPAL OFFICERS OF CITY OF WATERVILLE and the Inhabitants of the City of Waterville.**

Supreme Judicial Court of Maine.

March 15, 1973.

Isaacson & Isaacson, by Philip M. Isaacson, Harris M. Isaacson, Irving Friedman, Lewiston, for plaintiff.

Shiro & Jabar, by John P. Jabar, Waterville, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

The plaintiff corporation in a declaratory judgment proceeding under 14 M.R.S.A., § 5954[1] sought in the Superior Court of Kennebec County a judicial determination of the validity and constitutionality of the statutory provisions regulating the operation of junkyards, and especially the sections relating to permits and fees for the same, 30 M.R.S.A., §§ 2452, 2455, which read as follows:

Section 2452. Establishment and maintenance

"No 'automobile graveyard' or 'junkyard' shall be established, operated or maintained, or permitted by the owner of any land to be established, operated or maintained, without first obtaining a nontransferable permit from the municipal officers of the municipality wherein said automobile graveyard or junkyard is to be established, operated or maintained, . . . . which permit shall be valid only until the first day of the year following."

Section 2455. Permit fees

"The municipal officers or county commissioners as provided for in section 2452 shall collect in advance from the applicant for said permit a fee in accordance with the following schedule:

A. Ten dollars for each permit for an automobile graveyard or junkyard located more than 100 feet from any highway, plus the cost of posting and publishing said notice.[2]

---

1. 14 M.R.S.A., § 5954. Construction and validity of statutes

"Any person . . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, . . . may have determined any question of construction or validity arising under the . . . . statute, ordinance . . . . and obtain a declaration of rights, status or other legal relations thereunder."

2. By Public Laws, 1971, c. 260, the fee for permits in the case of junkyards located more than 100 feet from any highway was

B. Five hundred dollars for each permit for an automobile graveyard or junkyard located within 100 feet from any highway, plus the cost of posting · and publishing said notice."

The plaintiff demanded as additional relief from the Inhabitants of the City of Waterville reimbursement for the payment to the City of the annual license fees of five hundred ($500.00) dollars which it paid under protest in 1968, 1969 and 1970 respectively to obtain the statutory permit and avoid the criminal penalties provided for any violation of the statutory requirements under 30 M.R.S.A., § 2458.

The issue is presented to us by way of report on an agreed statement of facts pursuant to Rule 72(b), M.R.C.P.[3] The report is in proper form, including, as it does, the Justice's opinion of the importance and doubt of the legal question reported and the Attorney General's declination to participate in the proceedings after being served with a copy thereof pursuant to 14 M.R.S.A., § 5963.[4]

The plaintiff attacks the constitutionality of the statute on the following grounds:

(1) The statute unlawfully discriminates between junkyard businesses which are operated in a location within one hundred feet from a highway and those located more that one hundred feet from a highway.

(2) The statute unlawfully discriminates between junkyard businesses and other businesses, some of these other businesses being of comparable nature.

(3) The requisite license fee is unreasonable and oppressive.

(4) If the statute is intended as a police measure, then the pre-required fee is unreasonable in proportion to the costs of administration and enforcement of the law.

(5) If the statute is intended as a revenue-tax measure, then it amounts to "double taxation" since plaintiff is otherwise taxed in the operation of its junkyard business upon its real and personal property; it results in the imposition of an unconstitutional public tax lacking in uniformity.

(6) The statute clearly demonstrates on its face, by imposing the large fee of $500 in the case of junkyards within 100 feet from a highway as compared to a fee of $10 for junkyards more than 100 feet away, a legislative intent to prohibit the junkyard business by indirection, such legislation being unjust, oppressive, arbitrary and unconstitutional.

The agreed statement discloses that the plaintiff's premises from which it operates its junkyard business are located at 2 Drummond Avenue in the City of Waterville and lie within one hundred feet from the highway. It is undisputed that this business has been carried on from these premises since 1926 and is a non-conforming use under the zoning ordinance of the City of Waterville. It is situated in an area classified as Residential B, the second highest residential classification under the ordinance. The plaintiff's premises also abut upon High Street, another highway, and are otherwise surrounded by residential properties. The parties further agree in their statement of facts that the plaintiff is in compliance with proper screening

increased from ten to fifty dollars. We are not concerned with this statutory change.

3. Rule 72(b). Report on Agreed Facts. "The court may, upon request of all parties appearing, report any action to the Law Court for determination where there is agreement as to all material facts, if it

is of the opinion that any question of law is involved of sufficient importance or doubt to justify the same."

4. 14 M.R.S.A., § 5963. Parties "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration and no declara-

fences as mandated by the statute.[5] It is conceded that the cost to the municipality and the state for printing the applications for permits, the posting and publishing of notices, the maintenance of municipal records, the policing and patrolling of the locations are no greater in the case of junkyards situated within 100 feet from a highway than in the case of yards more than 100 feet away. It is admitted that in the City of Waterville another junkyard is located within 100 feet of a highway, while three others operate at a greater distance.

Preliminarily, we must keep in mind the strong presumption of constitutionality which the Judiciary must accord to all enactments of the Legislature, a co-equal branch of government. York Harbor Village Corporation v. Libby, 1928, 126 Me. 537, 140 A. 382. Our Court more specifically delimited the operational scope of the presumption, when it said in State v. Stinson Canning Company, 1965, 161 Me. 320, 211 A.2d 553:

"Every intendment must be made in favor of the validity of the law, if it appears that the means adopted are suitable to the end in view, impartial in operation, not unduly oppressive upon the individuals, and has a real and substantial relation to their purpose."

If a statute is within the legitimate range of the police power, has a fair tendency to accomplish the end proposed, is not unjustly discriminative, and does not destroy nor despoil a particular class, courts should not declare it unreasonable merely because they consider it impolitic or because it will operate harshly upon some individuals. The necessity for the statute and the manner of its enforcement are fundamentally legislative, not judicial, questions. Nulter v. State Road Commission of West Virginia, 1937, 119 W.Va. 312, 193 S.E. 549, 551, 194 S.E. 270.

In State of Maine v. King, 1936, 135 Me. 5, 188 A. 775, our Court reaffirmed certain general principles to be applied when statutory classifications are under attack for constitutional infirmity based on the claim that they are arbitrary, unreasonable, unjust and violative of the equal protection clause of the State or Federal constitutions.

From York Harbor Village Corporation v. Libby, supra:

"* * * [P]rivate property is held subject to the implied condition that it shall not be used for any purpose that injures or impairs the public health, morals, safety, order, or welfare. Under the police power, statutes and authorized ordinances give this condition practical effect by restrictions which regulate or prohibit such uses. If the use is actually and substantially an injury or impairment of the public interest in any of its

---

tion shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the Attorney General shall be served with a copy of the proceeding and be entitled to be heard."

5. 30 M.R.S.A., § 2454(4). Proximity.
   "No permit shall be granted for an automobile graveyard or junkyard within 100 feet of any highway if within view from said highway except those entirely screened to ordinary view at all times from said highway by natural objects, plantings or fences as hereinbefore provided [fences must be constructed and properly maintained at a minimum height of 6 feet] and the payment of an annual fee as provided in section 2455 [the fee being $500]."
   30 M.R.S.A., § 2454(5). Rules and regulations.
   . . . "municipal officers . . . . may in their discretion apply more stringent restrictions, limitations and conditions in any permit for an automobile graveyard or junkyard adjacent to any highway. Municipal officers may stipulate reasonable conditions which shall be attached to the permit covering the operation, use and other related matters."

aspects above enumerated, a regulating or restraining statute or ordinance conforming thereto, if itself reasonable and not merely arbitrary, and not violative of any constitutional limitation, is valid." (State of Maine v. King, supra, at page 10, 188 A. at page 778).

From Borden's Farm Products Co. Inc. v. Baldwin, 1934, 293 U.S. 194, 209, 55 S. Ct. 187, 192, 79 L.Ed. 281, 288:

"When the classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary." (State of Maine v. King, supra, 135 Me. at page 16, 188 A. at page 781).

From Soon Hing v. Crowley, 1885, 113 U.S. 703, 5 S.Ct. 730, 28 L.Ed. 1145:

"The specific regulations for one kind of business, which may be necessary for the protection of the public, can never be the just ground of complaint because like restrictions are not imposed upon other business of a different kind." (State of Maine v. King, supra, 135 Me. at page 17, 188 A. at page 781).

Again, from York Harbor Village Corporation v. Libby, supra:

"A classification must not be arbitrary. It must be natural and reasonable. . . . It must be based upon an actual difference in the classes bearing some substantial relation to the public purpose sought to be accomplished by the discrimination in rights and burdens. . . . If a classification, though necessarily discriminatory, stands these tests, it is not a denial of equal protection of the laws." (State of Maine v. King, supra, at pages 18 and 19, 188 A. at page 782).

Finally, from State of Maine v. Old Tavern Farm, Inc., 1935, 133 Me. 468, 180 A. 473:

"The Fourteenth Amendment does not prevent reasonable classification as long as all within a class are treated alike. The liberty guaranteed is not freedom from all restraints, but from restrictions which are without reasonable relation to a proper purpose, and are unjustly arbitrary and discriminatory." (State of Maine v. King, supra, 135 Me. at page 19, 188 A. at page 783).

■ Under Article IV, Part Third, Section 1, of the Constitution of Maine, the Legislature has "full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to this Constitution, nor to that of the United States." This is an express recognition by the framers of our Constitution that the legislative power is plenary except as it may have been circumscribed expressly or inferentially by the constitution of the state or nation.

"The people of the State of Maine in creating, by the State constitution, the legislative department of government, conferred upon it the whole of their sovereign power of legislation, except in so far as they delegated some of this power to the Congress of the United States, and except in so far as they imposed restrictions on themselves, by their own constitution, and fixed limits upon the legislative authority." Baxter v. Waterville Sewerage District, 1951, 146 Me. 211, 215, 79 A.2d 585, 588.

■ This power reserved to the people, to be exercised by their representatives in the legislative branch of government, is known as the police power. It embraces the power of the State to preserve and promote the public good and it is concerned with whatever affects the peace, security, health, morals and general welfare of the community. It defies definitional specifics as it is comprehensive and all em-

bracing in concept and its operational scope must envision a constant expansion and ever ready elasticity to meet the new and increasing demands for its exercise for the benefit of society. Farley v. Graney, 1960, 146 W.Va. 22, 119 S.E.2d 833. It must keep pace with the changing concepts of public welfare. Jasper v. Commonwealth, 1964, Ky., 375 S.W.2d 709.

■■ The Legislature can take cognizance, and this Court judicial notice, of the need for a comprehensive plan structured with a view to promoting safety in the development of our highway system in the State, and simultaneously salvaging the aesthetic value of our scenic beauty. We take judicial notice of the modern trend legislatively to protect the environment and of the fact that junkyards or motor vehicle graveyards have always been considered by the motoring public as patently offensive in character. See, Jasper v. Commonwealth, supra.

■ Legislation under the police power will not be declared constitutionally invalid for the mere reason that factual considerations of an aesthetic nature have entered into its passage. York Harbor Village Corporation v. Libby, supra. Whether the police power of the state is broad enough to permit legislation based solely on aesthetic considerations, we need not decide in the instant case.

The plaintiff contends that the reference statute, by imposing exorbitant license fees as a prerequisite to the right to operate junkyards within 100 feet of a highway amounts to a total prohibition, though by indirection, from continuing the operation of a legitimate business and as such is unconstitutional.

■ We recognize that certain businesses, which are generally viewed as inherently injurious to the public health and morals and productive of public disorder, such as the liquor traffic, may be prohibited altogether or so regulated under the police power by the imposition of license fees

so high as to tax the same out of existence. Where the license fees prevent the operation of a business except at a financial loss, then the legislation is an indirect means of accomplishing total prohibition. See, Lalumio v. Fasseas, 1960, 21 Ill.2d 135, 171 N.E.2d 43; Reale v. Judges of Superior Court, 1928, 265 Mass. 135, 163 N.E. 893. Where such businesses are tolerated by the Legislature, the amount of the regulatory license fees rests in the discretion of the legislative body, absent other constitutional restriction. Fylken v. City of Minot, 1936, 66 N.D. 251, 264 N.W. 728.

■ But the business of operating a junkyard or automobile graveyard is a legitimate enterprise which, while offending the aesthetic taste, does not constitute in and of itself a business inherently injurious or harmful to the public. By itself, it does not necessarily affect adversely the public peace or safety, nor can it be designated as a fire or health hazard. A junkyard business is not a nuisance per se. Vermont Salvage Corporation v. Village of St. Johnsbury, 1943, 113 Vt. 341, 34 A.2d 188; Levine v. Board of Adjustment, 1939, 125 Conn. 478, 7 A.2d 222; Commonwealth v. Christopher, 1957, 184 Pa.Super. 205, 132 A.2d 714; Anders v. Town of Danville, 1964, 45 Ill.App.2d 104, 195 N.E.2d 412; Bachman v. State, 1962, 235 Ark. 339, 359 S.W.2d 815; City of Akron v. Chapman, 1953, 160 Ohio St. 382, 116 N.E.2d 697, 42 A.L.R.2d 1140.

■■ Private property rights are not absolute but are held subject to the implied condition that they shall not be used for any purpose that injures or impairs the public interest. Buck v. Kilgore, 1972, Me., 298 A.2d 107. Thus, the business of operating a junkyard may be legitimately regulated within the scope of the police power, due regard to be had to the constitutional safeguards which demand that such regulations shall not be unreasonable, arbitrary or capricious and that the means adopted shall have real and substantial relation to the object to be attained.

■ Our Legislature, in its statement of purpose underlying the statute, has expressly declared junkyards and automobile graveyards nuisances subject to regulation and control.[6] While the State, in the exercise of its police power, has the authority to prevent and abate nuisances and the Legislature, in an effort to implement such power, may declare certain activities nuisances, nevertheless the exercise of such power cannot be made a cloak for confiscation or withdrawal of property from the protection of the law. What is not in fact a nuisance cannot be conclusively made so by mere legislative declaration. The final determination of the legal question remains for the courts. Commonwealth v. Christopher, supra; Commonwealth ex rel. Woodside v. Sun Ray Drug Company, 1955, 383 Pa. 1, 116 A.2d 833. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private legitimate businesses or impose unusual and unnecessary restrictions upon lawful occupations by labeling them nuisances. True, whether any particular type of business endeavor so injuriously affects the public good as to mandate legislative regulation as a nuisance through the exercise of the police power is, in the first instance, a question for the judgment of the law-making branch of the government, but its final determination as well as the reasonableness of the means used to protect the public welfare in relation thereto is for the courts.

We note that the statutory declaration to the effect that junkyards and automobile graveyards are nuisances is intimately connected with the obvious specific legislative purpose of protecting the motoring public against possible accidents which may arise by reason of the distraction of drivers caused by the fact that such yards within view of the highway create the appearance that an accident has occurred or that cars are parked on the highway. The Legislature has expressly indicated that its purpose is to regulate and control and not to prohibit completely. Furthermore, nowhere in the statute, did the Legislature intimate that aesthetic factors were being considered to any degree.

■ Under such circumstances, we must say that the business of operating junkyards or automobile graveyards cannot legislatively be declared nuisances as an absolute fact, although such businesses may be found to be such in fact depending upon the proof in each case. See, Andover v. Lake, 1965, 89 N.J.Super. 313, 214 A.2d 870.

In Houlton v. Titcomb, 1906, 102 Me. 272, 66 A. 733, our Court, after mentioning that a thing is not a nuisance merely because a municipal ordinance declares it to be such, did state that the State may declare what may, at law, be deemed a nuisance, for the purpose of determining jurisdiction of a court of equity in restraining violations of law.

The applicable principle of law is well stated in Vermont Salvage Corporation v. Village of St. Johnsbury, 1943, 113 Vt. 341, 34 A.2d 188 at page 196:

"The State, in the exercise of its police power, has authority to prevent or abate nuisances, and under this power, and subject to constitutional limitations, the legislature has authority to declare what shall be deemed nuisances and to provide for their suppression. * * *. But this power cannot be made a cloak for confiscation or for withdrawing property from the protection of the law.

---

6. 30 M.R.S.A., § 2451. Purpose.
"Junk yards and so-called 'auto graveyards' have been steadily expanding and frequently encroach upon highways. These junkyards and graveyards have become a nuisance and a menace to safe travel on public ways, often distracting the attention of drivers of motor vehicles because it appears cars are parked on the highway or that an accident has occurred. It is declared that such junkyards and automobile graveyards are a nuisance and are properly subject to regulation and control."

The legislature has no power arbitrarily or capriciously to declare any or every act a nuisance, and cannot enlarge its power over property or pursuits by declaring them nuisances; nor can it by mere declaration make that a nuisance which is not so in fact and thereby destroy or prevent a lawful use of property. The action of the legislature in this regard is subject to review by the courts. Although much must be left to the discretion of the legislature it usurps judicial power when it declares an act a nuisance when it is not."

We are not concerned with a revenue measure. The legislation is obviously for the purpose of regulation only. The Legislature so stated when it declared that "such junkyards and automobile graveyards are a nuisance and are properly subject to regulation and control." That the intent of the Legislators was to regulate junkyards and not to provide a source of revenue to municipalities is further confirmed by the elaborate screening scheme required under the act, the prohibition respecting their maintenance within 300 feet of any public park, public playground, public bathing beach, school, church or cemetery, and the fact that the municipal officers may apply more stringent restrictions, limitations and conditions than provided by the Act in the case of junkyards adjacent to highways.

■ The power to regulate and to license does not generally include the power to impose license taxes for revenue unless that power be expressly conferred. State of Maine v. Brown, 1936, 135 Me. 36, at page 40, 188 A. 713.

■ Where the purpose which the Legislature had in mind in enacting a statute is obvious, it is the duty of the court to carry out that purpose and so interpret the act as to accomplish the same. Emple Knitting Mills, Aplt. v. City of Bangor, 1959, 155 Me. 270, 153 A.2d 118.

The issue before us is two-fold, (1) whether the license fee of $500 per year is proper under the police power of the State to regulate junkyards and (2 )whether the classification of junkyards on the basis of their distance from the highway to sustain higher license fees is constitutionally justifiable.

"Under a general power to regulate and license, a municipality cannot, directly or indirectly, entirely prohibit a useful occupation or privilege. And the general principle is that the amount of the fee imposed in the exercise of the delegated police power for the purposes of regulation must be limited and reasonably measured by the necessary or probable expenses of issuing the license and of such inspection, regulation and supervision as may be lawful and necessary. If a license fee is so high as to be virtually confiscatory or prohibitive of a useful and legitimate occupation or privilege, the ordinance imposing it is invalid." State of Maine v. Brown, supra.

To the same effect, see Vermont Salvage Corporation v. Village of St. Johnsbury, supra.

The agreed statement of facts shows that the costs of obtaining the license are minimal, but it does not disclose what the costs of inspection, regulation and supervision might be on an average yearly basis. The plaintiff has not seen fit to support its claim that the annual license fee of $500 is substantially disproportionate to the reasonable costs of what the municipal officers require in the way of proper inspection and supervision of junkyards to safeguard the community against the nuisance tendencies which the operation of such businesses are apt to develop.

■ In Vermont Salvage Corporation v. Village of St. Johnsbury, supra, the Court ruled the license fee excessive as a matter of law where the change in the ordinance went from $12 to $200 without any apparent increase in the municipal duties relative to inspection or supervision. In the face of the presumption of constitutionality, we would hesitate to follow the

Vermont Court's approach. Furthermore, the plaintiff has not supported its claim that the annual license fee of $500 is in itself confiscatory. This is a factual question. See, M. W. Watson, Inc. v. City of Topeka, 1965, 194 Kan. 585, 400 P.2d 689; Holland Furnace Company v. City of Chaffee, 1955, Mo., 279 S.W.2d 63; Southern Lines Linen Supply Co. v. City of Corbin, 1938, 272 Ky. 787, 115 S.W.2d 321.

▮▮▮ The party challenging the constitutionality of a statute has the burden of establishing its unconstitutionality. Baxter v. Waterville Sewerage District, 1951, 146 Me. 211, at page 214, 79 A.2d 585. In the posture of the instant case, we cannot say that the statute is unconstitutional for the reasons stated that the annual license fee of $500 is substantially disproportionate to reasonable costs of supervision or that such amount is unlawfully confiscatory as a prerequisite to the operation of a legitimate business.

▮ But the plaintiff further contends that the statutory classification between junkyards situated within 100 feet of a highway and those located beyond 100 feet therefrom exacting a $500 license fee from those closer to the way while requiring only a $10 fee from those farther away, is an unconstitutional denial of the equal protection of the laws in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States and in deprivation of the guaranties under Section 1 of Article I of the Constitution of this State. The burden of showing that a classification is arbitrary and discriminates without reasonable basis is on the party asserting it. Verreault v. City of Lewiston, 1954, 150 Me. 67 at page 72, 104 A.2d 538.

The purpose of the Act is, as stated in Section 2451, the protection of the safety, health and welfare of travelers on public ways against accidents of the road by reason of the presence of a junkyard or automobile graveyard in close proximity to the highway. The Legislature has made a finding that junkyards and automobile graveyards often distract the attention of drivers by creating the appearance that cars are parked on the highway or that an accident has already occurred, and that such driver distraction is a menace to safe travel. These findings justify regulation such as the statutory requirement of keeping junkyards entirely screened at all times to ordinary view from the highway by natural objects, plantings or fences which shall be well constructed and properly maintained at a minimum height of 6 feet and acceptable to the municipal officers, etc. Screening as provided by the statute effects the intended purpose, which could only be to protect the traveling public from the false appearance to some drivers of a crowded highway or an accident scene, which clouded horizon, by reason of reflex action, could lead to erratic driving and accidental collisions.

▮ The added regulation to the effect that junkyards within 100 feet from a highway may not be licensed except upon payment of a fee of $500 while yards farther away are only subject to a fee of $10 bears no actual relation to the end purpose of the Act. The discrimination is unwarranted and arbitrary, the difference is illusory and in effect the statute unreasonably and without proper distinction favors some operators of junkyards over others. In that aspect, the Act is arbitrary and unreasonable, bears no genuine relation to the obvious purpose to be achieved, is prohibitory in nature and must be declared unconstitutional to that extent. The Act and its application under the police power must have a clear, real and substantial relation to its purpose. In the Matter of Spring Valley Development, By Lakesites, Inc., 1973, Me., 300 A.2d 736.

Furthermore, the difference in the amount of the license fees cannot be constitutionally justified, since the parties in their agreed statement of facts concede that the municipal and state costs of printing permit applications, posting and pub-

lishing notices, maintaining municipal records, policing and patrolling the areas where automobile graveyards or junkyards are located *are no greater for such yards as are situated within 100 feet from any highway than they are for such yards situated more than 100 feet from any highway.*

The presumption of constitutionality is not absolute, but must give way if "clear and irrefragable" evidence establishes the lack of a rational relationship between the evil sought to be prevented and the method adopted to do so. See, Buck v. Kilgore, supra.

Under the instant Act, the clause requiring license fees in the amount of $500 from the operators of junkyards or automobile graveyards located within 100 feet of a highway is declared invalid on the ground that it is discriminatory and arbitrary. By so doing, we do not wish to intimate that the Act is invalid in regard to any of its other provisions. That part of the clause stricken down is separable from and independent of the remainder of the Act and must be rejected, but the rest of the Act stands presumed to be constitutional in all its other aspects.

The entry will be

Section 2455B of Title 30 of the Maine Revised Statutes Annotated is hereby declared invalid and unconstitutional, only in so far as it requires the municipal officers to collect from the applicant for a junkyard permit "(f)ive hundred dollars for each permit for an automobile graveyard or junkyard located within 100 feet from any highway."

The plaintiff is entitled to reimbursement for the $500 license fee paid to the City of Waterville under protest for the respective years of 1968, 1969 and 1970, together with costs.

All Justices concurring.